Hoffman *v.* Commonwealth, Appellant.

Argued April 27, 1966. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edward D. Werblun,* Assistant Attorney General, with him *Michael R. Deckman,* Assistant Attorney General, *John R. Rezzolla,* Deputy Attorney General, and *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellant.

*James E. O'Brien,* with him *Joseph J. Cimino,* for appellee.

*William P. Farrell,* with him *Jerome P. Casey,* for appellee.

OPINION BY MR. JUSTICE EAGEN, June 24, 1966:

Catherine Hoffman is the owner of land[1] in Lackawanna County comprising approximately 4.6 acres. Improvements thereon include a large drive-in restaurant and a private residence. A portion of the land leased to Gerard X. Powell was used since 1959 for the maintenance and operation of a commercial miniature golf course.

On January 9, 1963, approximately .98 of an acre of the Hoffman land was taken by the Commonwealth in eminent domain proceedings. Included in the condemned portion was the entire section used for the Powell golf course.

---

[1] Title was formerly held for several years by Thomas and Catherine Hoffman, as husband and wife. Thomas Hoffman died in 1963.

The board of view awarded damages totalling $36,-500, which included $26,000 for the freehold interest and $10,500 for the lessee's interest. Both the Commonwealth and Powell appealed. The issue was then tried de novo before a jury in the court of common pleas on September 14, 1964. The jury returned a verdict for the claimants totalling $48,500; including $35,000 damages for the owner and $13,500 for the lessee. Judgments on the verdict were duly entered and the Commonwealth filed one joint appeal.

The Commonwealth contends that serious trial errors and an excessive verdict require the grant of a new trial.

The first assignment of error concerns the refusal of the trial court to grant a requested mistrial, because during the trial the local newspapers published news accounts thereof and mentioned therein the amount of damages reportedly awarded the claimants by the board of view. The Commonwealth argues that this made available to the jury prejudicial information that was inadmissible at trial. (See, Act of June 22, 1964, P. L. 84, No. 6, §703, 26 P.S. §1-703 (Supp. 1965)).[2] This argument is devoid of merit.

There is nothing in the record to show that any of the jurors read the news articles involved. They were not polled by the Commonwealth's counsel, despite ample opportunity to do so. Further, the news accounts were innocuous, non-inflammatory, and there is nothing to indicate that they in any way influenced

---

[2] Although the condemnation in this case took place in 1963, the new Eminent Domain Code applies, because the trial for damages was held in September 1964. The new act reads in pertinent part: "The provisions of Articles V and VII shall also apply to all steps taken subsequent to the effective date of this act in all condemnation proceedings in which the condemnation was effected prior to the effective date of this act." Act of June 22, 1964, P. L. 84, No. 6, Art. III, §302, 26 P.S. §1-302 (Supp. 1965). Articles V and VII deal with the matters at issue here.

the jury's findings. The jury awards bore no relationship to the amount of damages as published in the news articles. Refusal of a mistrial under these facts did not constitute an abuse of discretion.

In a criminal case, where the need for the protection of the rights of an accused is much more important than in a situation such as this, it has frequently been held that much more is required to warrant a mistrial than this record manifests. See, *Weston v. Commonwealth*, 111 Pa. 251, 2 A. 191 (1886); *Commonwealth v. Snopek*, 200 Pa. Superior Ct. 455, 190 A. 2d 161 (1963); *Commonwealth v. Stefanowicz*, 133 Pa. Superior Ct. 501, 3 A. 2d 22 (1938).

The Commonwealth next complains that the awards were excessive. Admittedly, there was ample competent evidence to support the jury's findings. In fact, certain testimony indicated that the fair market value of the land taken was substantially higher than the jury found. The only reason urged in support of the argument of excessiveness is that the jury awards were greater than those given by the board. Such a disparity is not, in itself, grounds for a new trial. See, *Brown & Vaughn Dev. Co. v. Commonwealth*, 393 Pa. 589, 143 A. 2d 815 (1958), and *St. Clair Cem. Assn. v. Commonwealth*, 390 Pa. 405, 136 A. 2d 85 (1957). To award a new trial on this ground alone would completely nullify the effect of the right of appeal from the board's findings and the right to a trial by jury.

The Commonwealth's most vigorous complaint is directed towards the lessee's award.

It is first argued that the trial court should have permitted greater latitude in the cross-examination of one of the lessee's expert witnesses.

During the Commonwealth's evidence, it developed that there *may* have been a slight disparity between the description of the land in Powell's lease and the boundaries of the golf course as it was actually laid

out on the ground. From this the Commonwealth argued that four of the eighteen holes of the course were located on land not included in the lease and not owned by Catherine Hoffman. However, it was undisputed that an eighteen-hole golf course had been destroyed in the taking. Further, it was not established by proper evidence that any part of the golf course was located on land not owned by Catherine Hoffman.

During the cross-examination of one of Powell's expert land-value witnesses, the Commonwealth inquired if his opinion as to the value of the leased land taken would be different "if [it] were shown" that Powell "only had a 14 hole miniature golf course." To this question an objection was sustained; in this we find no error.

The question was hypothetical and assumed a fact not in evidence. Moreover, the Commonwealth maintains that the cross-examination proscribed went to the witness's credibility. We do not agree. The cross-examination in question had nothing to do with the witness's credibility in general or his expertise in particular. Credibility means whether or not a witness is being truthful. This was never questioned. What the Commonwealth was actually testing was the competency of the witness's testimony and, even on this theory, the cross-examination served no purpose since the expert's testimony was directed to the value of the land taken and not the location thereof.

Finally, the Commonwealth complains that the lessee was improperly permitted to introduce evidence of reproduction costs of the golf course, because of the following colloquy at trial: "Q. Have you any idea, if you could find another location, how much it would cost you to construct a similar golf course? Mr. Van Deusen: We object to this question as not being proper and irrelevant. Mr. Farrell: To be followed by testimony of another witness showing the cost of replace-

ment or construction. The Court: I don't think that is the measure of damages here. Mr. Farrell: No, but it is permitted as a factor to be considered in the final determination of damages. The Court: We will allow the question. By the Witness [Mr. Powell]: A. Yes, I wrote to 2 manufacturers of miniature golf courses, Taylor Brother and Arnold Palmer Incorporated, and the figures ranged between $19,800 and $25,200."

The Commonwealth's only objection to this testimony was on the ground of relevancy. On appeal, the Commonwealth also contends that the testimony was inadmissible, because Powell was relying on a written report of another expert and no notice was given to the condemnor as required by the new code. See, Act of June 22, 1964, supra, §705, 26 P.S. §1-705(5) (Supp. 1965). However, since no objection on this ground was made at trial, the Commonwealth may not now object to any lack of pre-trial notice concerning this testimony. See, *Lewis v. Pittsburgh Rwys. Co.,* 386 Pa. 490, 126 A. 2d 454 (1956).

Therefore, the only question properly before this Court is whether the lessee of part of a condemned property may testify as to reproduction costs as an element in the valuation which he has put on his interest.

Prior to the adoption of the new code, the standard for all witnesses testifying as to valuation of condemned property was determined by the Act of April 21, 1915, P. L. 159, §1, 26 P.S. §101. No distinction between the types of witnesses was made by this section or earlier acts, and three classes of witnesses were permitted to so testify: (1) the person whose property was taken; (2) qualified experts who had studied the value of the property; and, (3) neighbors who had some knowledge of values in the area. *Westmorel'd C. & C. Co. v. Pub. Serv. Com.,* 293 Pa. 326, 142 A. 867 (1928), and *Sutton v. Penna. Railroad Co.,* 214 Pa. 274, 63 A. 791 (1906). The third class of witnesses is not mentioned in the

new code and it is unclear whether they are still competent to testify, and, if so, under what standards their testimony is to be admitted. See, Snitzer, Penna. Eminent Domain, 380 (1965). However, we need not reach that question at present, because the issue now before us is whether there is any distinction as to what testimony regarding value is permissible by the property owner, as distinguished from that of an expert.

Two sections of the new code are relevant to this issue. Section 704 (Act of June 22, 1964, supra, 26 P.S. §1-704 (Supp. 1965)) states, "The condemnee or an officer of a corporate condemnee, *without further qualification,* may testify as to just compensation." (Emphasis added.) As the owner of the leasehold, Powell is included within this section. See, Act of June 22, 1964, supra, §201, 26 P.S. §1-201(2) (Supp. 1965).[3]

The other relevant part of the code is §705 (Act of June 22, 1964, supra, 26 P.S. §1-705 (Supp. 1965)). It reads in pertinent part: "(1) A qualified valuation expert may, on direct or cross-examination, state any or all facts and data which he considered in arriving at his opinion . . . . (2) A qualified valuation expert may testify on direct or cross-examination in detail as to the valuation of the property on a comparable market value, reproduction cost or capitalization basis, which testimony may include but shall not be limited to the following: . . . . (iv) The value of the land together

---

[3] Ironically §302, 26 P.S. §1-302 (Supp. 1965) of the code, which governs this case does not make §201 of the Act of June 22, 1964, supra, 26 P.S. §1-201 (Supp. 1965) effective in a case where the condemnation took place before the effective date of the act, but where the case was tried after it took effect, and this section is the only place in the act where "condemnee" is defined. However, in a case such as this, §201 provides the best possible evidence of what the legislature intended by the applicable terms of the act.

with the cost of replacing or reproducing the existing improvements thereon less depreciation or obsolescence."

It seems clear from this section that an expert could properly testify as to what it would cost to "reproduce" the Powell golf course, if such cost were an element in the valuation he arrived at. This Court so indicated in *Mott v. Commonwealth of Pa., Dept. of Hwys.*, 417 Pa. 426, 207 A. 2d 872 (1965), and the Commonwealth does not seriously dispute this conclusion. The only question is whether the owner himself may testify on reproduction costs as an element in his valuation.

It may be argued that a distinction should be made between the owner and an expert because the latter is more likely to possess the knowledge necessary for testimony in such matters as "reproduction costs." Our courts, however, have left any such distinction in qualifications up to the jury. See, *Price v. Commonwealth*, 205 Pa. Superior Ct. 142, 208 A. 2d 23 (1965). The new code does the same. The comment to §705 states: "As under existing law, the viewers or the trial judge, as the case may be, determine whether the witness is qualified to express an opinion, *except in the case of a condemnee.*" (Emphasis added.) Thus, the condemnee is a "qualified expert" automatically under the act. As such, he may properly testify, as the lessee did here, as to what elements were considered in the valuation he puts on the property. The purpose of the pertinent sections of the code is to bring out before the jury the elements which a witness is using in valuing the condemned property, and thus aid the jury in properly ascertaining the true facts, and in assessing the witness's testimony as to valuation. To hold otherwise would mean that the owner of the property could state only the valuation he put on his property without being permitted to demonstrate to the jury the elements

he considered in reaching his valuation. A qualified expert, on the other hand, could show the elements he considered in reaching his valuation. Such a rule would be markedly unfair, because the jury could easily imply that the owner's valuation was a mere guess.

We, therefore, rule that an owner of condemned property may now testify to reproduction costs, if such were an element in arriving at his estimate of value.

Judgments affirmed.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

Section 705 of the Code, Act of June 22, 1964, P. L. 84, §705, does not permit the expert to testify as to "reproduction cost" alone. The Code only permits an expert to testify as to reproduction cost *less depreciation or obsolescence.* It is for that reason that I would not permit the condemnee to testify as to "reproduction cost." Nor would I permit the condemnee to testify as to reproduction cost less depreciation or obsolescence. While an owner may testify to market value, neither the Code nor logic qualifies him to testify as to the highly technical requirements necessary to establish any worthwhile data on depreciation or obsolescence. Thus, *Price v. Commonwealth,* 205 Pa. Superior Ct. 142, 208 A. 2d 23 (1965), in no way supports the majority's position that the owner may testify to the "reproduction cost" of property taken.

The legislature, when it adopted the Code, had an opportunity to permit such testimony by a condemnee—it did not so do and I would not permit it by judicial fiat.

Mr. Justice JONES joins in this dissenting opinion.