## Semiramis D. Baldwin, Appellant, v. B. Franklin Taylor and Joseph Bonsall.

*License—Real estate—Definition of license.*

License, as a term of real estate law, is an authority to do a particular act or series of acts upon the land of another without possessing any estate therein. It is usually created by parol, though it may be inferred from circumstances in the relationship of the parties. It is usually confined to the original parties, and is generally revocable at the will of the licensor, and not assignable unless coupled with an interest.

*License—Equitable estoppel.*

A license may become irrevocable by equitable estoppel where the licensee relying upon the license takes possession and makes valuable improvements, and the parties cannot be placed in statu quo after the license has been executed. Where, however, there has been no expenditure on the faith of the license, there is no foundation for an estoppel, and the license may be revoked.

The payment of a consideration for a license does not of itself render it irrevocable.

In an action of trespass to recover damages for the act of the defendant in cutting plaintiff off from the use of a stairway on defendant's premises, it appeared that defendant purchased from plaintiff's predecessor in title a lot adjoining land belonging to the latter. The two parties were about to erect adjoining buildings. Plaintiff's predecessor in title testified as follows: "He (defendant) wanted me to deed him twenty feet—two feet in excess—and he would put in the staircase for the use of the whole building and by that means he would accommodate the post office on my side. He would put in the staircase on his side and arrange the building for the benefit of ourselves and the tenants we would have in common together." The tenants which the parties had at first in common subsequently moved, and the second and third floors were divided by partition walls built on the line between the properties. *Held*, that the license was revocable.

*Evidence—Equity—License.*

In the above case the only person who testified to the license was plaintiff's predecessor in title. Defendant denied it. *Held*, that as the proceeding was really in the nature of a bill in equity to restrain defendant from interfering with a license, the equitable rule as to evidence should prevail; and as plaintiff's testimony was not supported by a second witness, or by corroborating circumstances, it was insufficient to submit to the jury.

Argued Feb. 12, 1895. Appeal No. 87, July T., 1894, by plaintiff, from judgment of C. P. Chester Co., Oct. T., 1893, No. 37, on verdict for defendants. Before STERRETT, C. J., MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for obstructing a stairway. Before HEMPHILL, J.

At the trial it appeared that B. F. Taylor and Joseph Bonsell were merely the agents of George D. Hayes, who was the real defendant in the case.

The facts of the case are fully stated in the opinion of the court below, discharging a rule for a new trial.

The court charged in part as follows : " You may render your verdict for the defendant." [2]

Verdict for defendant.

The court discharged a rule for a new trial; HEMPHILL, J., filed the following opinion :

" This is an action of trespass brought by the plaintiff against the defendants for closing up two doorways on the property of George D. Hayes, adjoining her own, by reason of which she was deprived of ingress and egress to and from the second and third stories of her building, over a stairway located within the building of the said Hayes, the right to the use and enjoyment of which, for herself and her tenants, she claims under an irrevocable license from the said Hayes to Robert L. Baldwin, her predecessor in title.

" The evidence of the plaintiff's right to the use of this stairway rests upon the testimony of the said Robert L. Baldwin, which briefly stated was as follows : In the spring of 1871 he, Baldwin, contracted with H. S. Worth for the purchase of a lot in the borough of Oxford, 48 feet in front on Market street and in depth 105 feet. Shortly thereafter and before title had passed he agreed to sell to George D. Hayes a portion (18 feet

front) of this lot. The bargain was not then concluded because Hayes said there were parties who would want to occupy rooms if they would erect a building properly (the post office and secret societies) and that he would look it up. When he returned he proposed that we build one building together, alike in every particular, building material, windows, style of architecture and everything, and that the societies would take the third story if it was all in one room. Baldwin replied that he could not accommodate them on his side without limiting his own space for business, unless they put in but one stairway, and on his (Hayes) side. Hayes then said that if Baldwin would deed him 20 feet he would put in the stairway for the use of the whole building, that it would be for the benefit of themselves and the tenants they would have in common and in that way the post office could be accommodated on his, Baldwin's side. This proposition was agreed to; they prepared their own plans, and the building was commenced the last of April or first of May, 1872, and finished in the fall of that year.

" Between the properties, there was, in the basement a communicating door, on the first floor a solid partition wall, in the second a large opening, six or eight feet wide in the partition wall, and the third was all in one room.

" The stairway was erected in the Hayes building and was reached by entering a doorway in the center of that building, which opened into a store room, and by passing along the front of that store room to the foot of the stairway.

" Each paid for his own building and they were in no sense joint owners. They were separated in the deeds from Worth and by a party wall erected on the division line.

" The whole of the third floor was occupied by the secret societies until the spring of 1875, when they removed from the building, and The Oxford Press Company, which, up to that time, had occupied the whole of the second, moved up and took possession of the third floor just vacated by the societies.

" The opening between the buildings on the second floor was then built up with a solid wall and a doorway cut in the partition wall at the head of the stairway.

" Theodore K. Stubbs, Esq., then leased the room on the Baldwin side from Mr. Baldwin and the right to the use of the stairway from Mr. Hayes, and so continued to occupy the one and use the other until June, 1893.

" In 1881 or 1882 the Oxford Press Company vacated the third story on the Baldwin side, and a partition wall was erected on the division line, leaving however a doorway connecting with the stairway. Mr. Baldwin then leased his side to the Odd Fellows and Mr. Hayes leased them the right to the use of the stairway. This leasing continued for about fifteen months, when the room was next leased to Douglass Brinton, who was connected with and was a son of one of the owners of the Oxford Press, and since his vacation it has been used for storage purposes by Mr. Baldwin. The leasing of the stairway from Hayes, by both Stubbs and the Odd Fellows, Baldwin knew of, not when the leases were made, but sometime thereafter. The opening in the basement was built up at the termination of Dr. Barton's tenancy, in 1873 or 1874, and the doorways in the second and third stories, by the defendants, in June, 1893.

" On behalf of the defendants, George D. Hayes deposed that he had never entered into any contract with the plaintiff or any former owner of the land now held by her, to pass and repass over his premises, except that in the latter part of the year 1881 R. L. Baldwin asked for the temporary use of the stairway for his mechanics to put up the partition in the third story, which was granted; that he built the stairway on his side of the party wall entirely at his own expense; that Mr. Baldwin said to him that, as he was to occupy the second and the secret societies the third stories of both buildings, there was no need for a stairway at that time in his building, and that he could use his first story to better advantage by not taking up the front with a stairway and that he would put one up at any time whenever needed for the use of the occupants of his building. Mr. Hayes further deposed, that with the exception of himself, his employees and the tenants they had in common, no other persons ever used the stairway for the purpose of occupying the rooms of plaintiff without first getting permission from him by lease or otherwise.

" Theodore K. Stubbs, Esq., testified that he had a conversation with Mr. Baldwin when he first leased from him, which he could not now repeat, but that that conversation led him to make a lease with Mr. Hayes for the stairs, that the last year he was there Baldwin asked him to try and get the stairs, saying, ' I do not think I can get them and I think you can.'

" John M. Moore testified that he was one of the trustees of the Odd Fellows who leased from Baldwin ; that at the time of the leasing he told the trustees that he could not give them the right of the stairs to get to the room ; that he had no control over them and consequently could not rent them to us. He told us to go to George D. Hayes. We went and leased the stairs from him.

" John Wiley, another trustee, testified in substance the same : That Baldwin said either he would not rent the stairway from Hayes, or Hayes would not rent the stairway to him, and that we would have to go to Hayes for the steps.

" Mr Baldwin denied so much of the conversations between himself and the trustees and Mr. Stubbs as had reference to admissions by him that Hayes had control over the stairway and that he had no right to use or lease the same.

" This is in substance the evidence upon which the court directed a verdict for the defendants, and in so doing it is alleged, erred, and it is upon the ground of this alleged error, that a new trial is now asked for.

" Was it then, under the evidence, error to give binding instructions to find for the defendants?

" The plaintiff's right to damages is dependent upon whether the use of the stairway in the Hayes building is a right appurtenant to the messuage purchased by her created by an irrevocable parol license given by Hayes to her predecessor in title.

" If no such license exists no trespass was committed. License, as a term of real estate law, is defined to be ' an authority to do a particular act or series of acts upon another's land without possessing any estate therein,' and is usually created by parol, though it may be inferred from circumstances in the relationship of the parties.

" It is distinguished from an easement, which must be created by grant or prescription, in the fact, that the latter always implies an interest in the land upon which it is imposed.

" ' A dispensation or license,' says Chief Justice Vaughn, in Thomas v. Sowell, 1 Vaughn, 351, ' properly passeth no interest, nor alters or transfers property in anything, but only makes an action lawful which without it, had been unlawful.'

" Being therefore created by parol it is ordinarily confined to the original parties ; its terms must be strictly followed and

cannot be extended or varied; is generally revocable at the will of the licensor and not assignable unless coupled with an interest; for to give it an effect which is denied to a contract in parol, would virtually be to abrogate the statute of frauds.

" Yet an equitable estoppel may convert a license into what is in effect, an easement, 'not upon the principle, however,' says Judge Duncan in LeFevre v. LeFevre, 4 S. & R. 241, 'that the right passes by the parol agreement, but that whenever one party has in part executed it, by payment of money, taking possession and making valuable improvements, the conscience of the other is bound to carry it into execution and equity will compel him to do it.'

" And ' here where we have no court of chancery to resort to in order to compel such a thing to be done, it will be considered in our courts of law as actually done and the grantee or promisee protected in the enjoyment of the thing promised accordingly:' McKellip v. McIlhenny, 4 Watts, 322.

" And the principle of equitable estoppel is also recognized and enunciated by Judge Gibson in Rerick v. Kern, 14 S. & R. 271.  'Equity,' he says, ' will execute every agreement for the breach of which damages may be recovered, where an action for damages would be an inadequate remedy.'

" Referring to the cases cited and others, Judge Strong in Huff v. McCauley, 53 Pa. 206, adds: 'All these decisions rest upon the principle of estoppel.  The parties cannot be placed in statu quo after the license has been executed and work done or money expended on the faith of it, and hence such a case is regarded as presenting a sufficient reason for a chancellor's interference to restrain any action of the licensor which would deprive the licensee of the benefit of the expenditure he was encouraged to make by the very party who seeks to make it fruitless.'

" But where there has not been expenditure on the faith of a license as in the present case, there is no foundation for an estoppel and the same reason does not exist for holding it irrevocable.   Even if there has been a consideration paid, there is nothing in the way of restoring the parties to their original condition.   No case in this state has gone to the length of ruling that it is converted into a contract giving irrevocable interests in or out of lands by a mere fact that a consideration was

to be paid or allowed for it. Such was not either of the cases that have been cited. In all of them something has been done in reliance upon the license and it was impossible to restore the licensees to the position they occupied before the license was given. Revocation therefore would have been a fraud.

"In the case under consideration Mr. Baldwin, the only witness who testified as to the terms of the license, said: 'He (Hayes) wanted me to deed him twenty feet—two feet in excess—and he would put in the staircase for the use of the whole building and by that means we would accommodate the post office on my side. He would put in the staircase on his side and arrange the building for the benefit of ourselves and the tenants we would have in common together.'

"What then was the character and extent of this license? Was it limited or unlimited?

"For a right under a license when not specially restricted is commensurate with the thing of which the license is an accessory. But it is otherwise where the object to be accomplished is temporary:" Rerick v. Kern, supra.

"The agreement therefore seems to have been that in consideration of the two additional feet and to accommodate the post office in Mr. Baldwin's building, Mr. Hayes agreed to put a stairway in on his side for the use of the building and for the benefit of themselves and the tenants they expected to have in common.

"It was a license to Mr. Baldwin to use the stairway and so far was nonassignable. It was also a license to the tenants they would have in common to use them. At the time the tenants they expected to have in common were the secret societies and The Oxford Press Company; and they actually became their tenants and used and enjoyed the stairway so long as they remained such; but immediately upon their leaving, the second and third stories were by mutual consent divided by walls built on the line between the properties, doorways only being left as exits from the Baldwin side to the stairway.

"Viewed in the light of the circumstances existing when created it was a restricted license, restricted to the use of Mr. Baldwin and the tenants he would have in common with Mr. Hayes and who had already engaged to occupy the second and third stories, and which when vacated by them were so altered

as to indicate that tenants in common were not thereafter expected to use them, if it did not preclude such use, each owner seeming thereby to contemplate a sole use of his own property.

" Nor is there any ground upon which the plaintiff can invoke the principle of equitable estoppel, for the licensee has not expended money, done work or made improvements on the faith of the license, but on the contrary has saved money by having the use of Mr. Hayes's stairway for many years, thus relieving him from building one on his own premises, and further by having the full and free use of his whole first floor front unincumbered with a stairway.

" In the case of Pierce v. Cleland, 133 Pa. 189, upon which the plaintiff seems to rely as controlling this case, the facts and circumstances were quite different.    There the owners were tenants in common at the time they adopted the plan and let the contract, and the building was built upon a common and single plan and as a single structure.    In our case, the parties were not tenants in common, each owned his own lot; they prepared their own plans for their mutual accommodation and that of the tenants they had already engaged and expected to have in common, but not excepting so far as uniformity of exterior, as a single plan and for the erection of a single structure.

" But even if the plaintiff was right in her contention that the license, as testified to by Mr. Baldwin, was an irrevocable one, and conferred a right appurtenant to her property in the use of the stairway, has it been established by sufficient evidence?

" The scintilla doctrine, though now obsolete in England, in our federal courts, and in most of the states, still exists, though in a mildly modified form, in this state, and, were this in substance as it is in form an action at law, it would have been our duty to have submitted the case to the jury, for the testimony of Mr. Baldwin amounted to more than a mere scintilla of evidence, and the Supreme Court in Holland v. Kindregan, 155 Pa. 160, say, ' If there is a conflict of evidence it must go to the jury unless the evidence on one side amounts to but a scintilla,' though in the next sentence but one it declares that, ' Where the evidence is so weak that it would be the duty of the court to set aside the verdict of the jury, there is no propriety in submitting it.'

" This action, though in form trespass, is in substance a bill in equity to restrain the defendants from interfering with a license the plaintiff claims in and upon the property of George D. Hayes. Her claim is an equitable one, resting solely upon the ground of an equitable estoppel, and while in this state we administer equity through the legal forms, yet in its administration the courts are governed and guided by the rules and practice in equity.

" Said Judge STRONG in Todd v. Campbell et al., 32 Pa. 252: ' The administration of both legal and equitable principles through the medium of legal forms, which has so long prevailed in this state, has given rise to some mistaken impressions. There are not a few cases in which, in a common law proceeding, a plaintiff sets up a simple equity; and with equal frequency an equity is the sole defence. The principle, however, does not change because it is applied in a strange forum and in a new form of proceeding. It has sometimes been thought that, when an equitable case is to be adjudicated in a tribunal composed of both a judge and a jury, the latter are to determine what the equities between the parties are. This is a mistake. The judge alone is the chancellor. It is in his discretion whether he will send an issue to a jury. And if he does, their verdict is only advisory. It is not conclusive upon him. Whenever, therefore, upon the trial of an ejectment, founded upon an equitable title, the court is of opinion that the facts proved do not make out a case in which a chancellor would decree a conveyance, it is their duty to give binding instructions to that effect to the jury. The responsibility belongs to the judge, and he may not throw it off upon those whose only duty is to aid him in ascertaining disputed facts.'

" And in Faust v. Haas, 73 Pa. 300, Judge SHARSWOOD said: ' It is perfectly well settled that in the administration of equity in the courts of this state through common law forms, the judge sits as a chancellor assisted by the jury, who are to determine the credibility of the witnesses and the effect of conflicting testimony. But the conscience of the judge as chancellor must be satisfied of the sufficiency of evidence if believed. If it be too vague, uncertain or doubtful to establish the equity set up, it is his duty to withdraw it from the jury by a nonsuit or a binding instruction in his charge, as the case may require.'

"And again in Ballentine v. White, 77 Pa. 27, the same judge said : 'It is true that the character of the whole case as presented must be such as to satisfy the conscience of the chancellor that the equity is clearly, not doubtfully, established by the evidence of the witnesses if believed.'

"Now as the equity here sought to be enforced is in derogation of the statute of frauds, the parol proof must be full, complete, satisfactory and indubitable in order to satisfy the chancellor.    For a chancellor to doubt is to deny.

"If a chancellor were to act on doubtful parol proof or strained and fanciful inferences or vague surmises, he would annul the wholesome provisions of the statute in search of a visionary equity, and introduce into the community the very evils which the legislature intended to remedy : Lord's Appeal, 105 Pa. 460.

"In the present case the evidence to sustain the plaintiff's equitable estoppel rests upon the testimony of R. L. Baldwin alone and is denied by George D. Hayes, and the chancery rule, that where the equity is supported by the testimony of but one witness and is denied by that of another, the denial must prevail, would of itself have justified the binding instructions, because of the insufficiency of the plaintiff's evidence.

"But the defendants, though the burden was not upon them, did not rest wholly upon the testimony of Hayes, but called, as we have seen, three other witnesses who testified to declarations and admissions by Baldwin, inconsistent with the plaintiff's claim of an irrevocable license.

"Under the rules of equity the testimony was insufficient to make out the plaintiff's case or to justify a finding in favor of the alleged irrevocable license.

"Being therefore of opinion that the license was not irrevocable but restricted and temporary, and that the plaintiff's evidence was insufficient to establish an equitable estoppel, we think we did right in giving the jury binding instructions to find for the defendants and must therefore refuse a new trial and discharge the rule."

Judgment was entered on verdict.    Plaintiff appealed.

*Error assigned* was, among others, (2) above instruction, quoting it.

*Thomas W. Baldwin* and *J. Frank E. Hause,*for appellant.— The license was irrevocable : Campbell v. McCoy, 31 Pa. 263 ; Lacy v. Arnett, 33 Pa. 169 ; Thompson v. McElarney, 82 Pa. 174 ; Pursell v. Stover, 110 Pa. 43 ; Pierce v. Cleland, 133 Pa. 189.

*Wm. T. Fulton* and *E. D. Bingham,* for appellees.—The evidence was insufficient: Bailey v. Snyder, 13 S. & R. 160 ; Seitzinger v. Weaver, 1 Rawle, 377 ; Farmers & Mechanics Bank v. Galbraith, 10 Pa. 490 ; act of May 28, 1715, sec. 6, 1 Sm. L. 95 ; Purdon's Digest, p. 582, Pl. 93 ; Shaffer v. Greer, 87 Pa. 370 ; Memmert v. McKeen, 112 Pa. 315.

There is no principle of equitable estoppel involved in this case: LeFevre v. LeFevre, 4 S. & R. 241 ; Rerick v. Kern, 14 S. & R. 267 ; Lacy v. Arnett, 33 Pa. 169 ; Huff v. Mc-Cauley, 53 Pa. 209 ; Pierce v. Cleland, 133 Pa. 189 ; Hepburn v. McDowell, 17 S. & R. 383.

The license was revocable : LeFevre v. LeFevre, 4 S. & R. 241 ; McKellip v. McIlheny, 4 Watts, 322 ; Rerick v. Kern, 14 S. & R. 271 ; Huff v. McCauley, 53 Pa. 206.

The equitable rule as to evidence should prevail in this case : Todd v. Campbell, 32 Pa. 252 ; Nicholls v. McDonald, 101 Pa. 514 ; Jackson v. Payne, 114 Pa. 67.

Per Curiam, March 5, 1895 :

Neither of the assignments of error is sustained. In his opinion discharging the rule for new trial the learned judge of the common pleas has fully and satisfactorily vindicated the correctness of his rulings. On that opinion we affirm the judgment.

Judgment affirmed.