Thompson et ux., Appellants, *v.* Commonwealth, Department of Highways.

330

Argued April 14, 1969. Before WRIGHT, P. J., WAT-
KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and
CERCONE, JJ.

*H. Ray Pope, Jr.,* for appellants.

*Albert W. Johnson, III,* Assistant Attorney General, with him *William C. Sennett,* Attorney General, for Commonwealth, appellee.

OPINION BY MONTGOMERY, J., June 13, 1969:

This appeal requires an interpretation of Section 705, Art. VII, of the new Eminent Domain Code of 1964, Special Session, June 22, P. L. 84. The issue before us, as expressed by appellants, the property owners-condemnees, in their brief under Statement of Question Involved, is as follows: "1. May a valuation expert in an eminent domain case testify as to the dollar value of (a) land; (b) cost of adjustments; and (c) facts and data which he used in arriving at his opinion of the before and after values?"

The appellants were the owners of 76 acres, more or less, of land in Beaver Township, Clarion County, Pennsylvania, improved with a frame dwelling, barn, and outbuildings requisite to a farming operation. Part of this property was taken by the appellee for the construction of a portion of Interstate Route 80, otherwise known as the Keystone Shortway. Within the area taken were appellants' barn and a gas well belonging to Fairman Drilling Company of DuBois, Pennsylvania, from which appellants were taking gas for use in their home without charge. The Commonwealth capped or plugged the well after it had acquired it in these proceedings.

The Board of Viewers awarded to the condemnees damages in the amount of $7,700. The Commonwealth appealed. Thereafter, a jury in a trial presided over by Hon. LLOYD F. WEAVER, President Judge, rendered a verdict in appellants' favor in the sum of $6,000, exclusive of interest. From the refusal of the condemnees' motion for a new trial and the entry of judgment on the verdict, they appealed.

The thrust of appellants' main argument is that they were wrongfully denied the right to ask expert witnesses on either direct or cross-examination, the following question, viz., "Would you break down for us in dollars the various data and facts which you considered, not as special items of damage but as they related to before and after value?" Particularly, an expert for the Commonwealth was asked on cross-examination whether he had placed a dollar value on the Christmas tree area of appellants' land and what value per acre he had applied; also whether he had applied a dollar value to damages due to physical conditions such as erosion, drainage, etc.

Prior to the Eminent Domain Code of 1964 the law was well established that such questions were improper, *Hasenflu v. Commonwealth*, 406 Pa. 631, 179 A. 2d 216 (1962); *McSorley v. Avalon Borough School District*, 291 Pa. 252, 139 A. 848 (1927); except when they sought to elicit the cost figures in estimating necessary construction work required to utilize the remaining land, and then not as distinct items of damages but as elements bearing on the before and after values of a particular exercise of the right of eminent domain. *Mott v. Commonwealth of Pennsylvania, Department of Highways*, 417 Pa. 426, 207 A. 2d 872 (1965).[1] Also see *Pittsburgh Terminal Warehouse & Transfer Company v. Pittsburgh*, 330 Pa. 72, 198 A. 632 (1938).

---

[1] This case had been tried prior to June 22, 1964.

Under Section 705, Art. VII, of the 1964 Code, it appears clear that the Legislature intended to enlarge the scope of permissible inquiry into the preparation made by a real estate expert to give an opinion as to the before and after values of a subject property.[2] A qualified real estate expert may now state all facts or data which he considered in arriving at his opinion. (§705(1)) Whereas the Act of 1915, P. L. 159, permitted qualified witnesses in eminent domain cases to state in detail, *and costs*, all elements of benefit or damage which they had taken into consideration in arriving at their before and after values, the 1964 Act changed this in §705(1) to read, "facts and data", but omits "costs". Appellants contend the new act is broad enough to include an evaluation of the various elements considered by the expert. We do not agree. This was not permitted before 1964 and §705(1) does not expressly allow it to be done. Statutes are never presumed to make innovations in the rules or principles of the common law or prior existing law beyond what is expressly declared in their provisions. *Holton Estate*, 399 Pa. 241, 159 A. 2d 883 (1960). We conclude, §705(1) does not support appellants' contention since it does not expressly change the law as it previously existed.

Section 705(2) is more specific and permits qualified experts in such cases to testify in detail as to the value of the property on three bases: (a) comparable market value, (b) reproduction cost or (c) capitalization, which testimony may include but shall not be limited to: (i) Sales, etc., of the condemned property or comparable property. (ii) Rents and terms of leases. (iii) Capitalization of rents, and the following which are particularly relied on by appellants. "(iv) The

---

[2] See Comments of Joint State Government Commission in its 1964 Report, 26 P.S. §1-705 (pp).

value of the land together with the cost of replacing or reproducing the existing improvements thereon less depreciation or obsolescence. (v) The cost of adjustments and alterations to any remaining property made necessary or reasonably required by the condemnation."

We find nothing in the record to indicate that any of the witnesses were denied the privilege of testifying that they had arrived at their opinion of before and after values by either of the three approaches set forth in §705(2), i.e., comparable market values, reproduction costs, or capitalization of rents, profits, etc., or of explaining the elements of damages they had considered. Appellants' argument is that they were denied the right to elicit from the witnesses their opinions as to the dollar value of each element or item of damage, which is the same argument advanced under §705(1). We recognize that they are not claiming that they are entitled to the sum total of all such items as special damages, but only the right to demonstrate how such total is reflected in the witnesses' opinions of values of the property as it existed before and after the condemnation. Specifically, they seek to ascertain not only the value of the land separate from the buildings but also the value of particular areas of the land such as the one on which there existed a plantation of Christmas trees, and others where physical conditions such as erosion of the soil or wet conditions existed, thus endeavoring to distinguish the acreage value of different parts of the whole tract. In addition they seek to establish the dollar value of replacing the furnace, water heater, stove and refrigerator in their home, or converting them to another source of energy, which they claim was necessary because their supply of free gas was cut off.

Prior to §705(IV), set forth above, evidence of reproduction costs were not admissible to fix damages

unless the circumstances were such as to render the admission of such testimony absolutely essential in the interest of justice. *McSorley v. Avalon Borough School District*, supra. To what extent a witness may now testify as to reproduction costs under this provision of the Code we need not decide since it has been held that such testimony may be given only when the costs of reproduction are considered by the witness in arriving at his opinion of values before and after. *Hoffman v. Commonwealth*, 422 Pa. 144, 221 A. 2d 315 (1966); *Mott v. Commonwealth of Pennsylvania*, supra. None of the expert witnesses' testimony reflected that they evaluated this property by the reproduction approach. The comment of the Joint State Government Commission on this section reflects this conclusion. "The reproduction approach is another basic approach to valuing property. If an expert has used such method in a particular case, evidence thereof should be allowed together with any explanation.

"This approach to value will be particularly helpful in valuing special use properties, such as churches, which have no normal market price."

Section 705(v) permits a witness to express the cost of adjustments and alterations to remaining property made necessary or reasonably required by the condemnation.

We need not distinguish between the various items affected by the termination of appellants' supply of gas to their home in the light of our subsequent discussion. Without question, some adjustments had to be made to restore the accommodations they had prior to the condemnation, but they were not due to the condemnation. Prior to the 1964 Code, *Puloka v. Commonwealth*, 323 Pa. 36, 185 A. 801 (1936); *Westinghouse Air Brake Company v. Pittsburgh*, 316 Pa. 372, 176 A. 13 (1934), are authority for the principle that

estimates as to the cost of rebuilding specific items of property affected by condemnation proceedings were permissible as bearing on the market value of the property, but not as distinct items of damage. Section 705(v) is a restatement of that principle. Thus it would appear that, regardless of which approach the witness took to determine the value of the property as a whole, i.e., comparable market, reproduction costs, or capitalization, he may give his estimate of the cost of adjusting and altering the remaining property made necessary or reasonably required by the condemnation as it reflects on total value.

Such principle, however, has no application to the facts of this case for the reason that no adjustment or alterations were necessary to appellants' remaining property by reason of the condemnation. The well from which appellants received their gas was owned by the Fairman Drilling Company, which permitted appellants the privilege to use gas from it without charge. Appellants admitted in their testimony that this company could have plugged the well and terminated their privilege at any time. Therefore, appellants had no right to the gas but merely had a license revocable at will. A license ordinarily is a mere personal or revocable privilege to perform an act or series of acts on the land of another, which conveys no interest or estate. *Baldwin v. Taylor*, 166 Pa. 507, 31 A. 250 (1895). Consequently, a revocable license is automatically revoked by the sale of the property burdened by the license, *Puleo v. Bearoff*, 376 Pa. 489, 103 A. 2d 759 (1954), and a licensee has no right to compensation when the property is taken under eminent domain. *Strickland v. Pennsylvania R. R.*, 154 Pa. 348, 26 A. 431, 32 W.N.C. 211 (1893). When the Commonwealth condemned the area on which the well was drilled and became the owner of it, appellants were not affected; but it was only after the condemnation that the Com-

monwealth exercised the right its ownership gave it and plugged the well, ending the appellants' privilege. For these reasons, the expense appellants were put to in changing their facilities was not a proper element of damage to be considered in the condemnation proceedings.

However, rather than being prejudiced by the court's ruling on this matter, appellants benefited because they were privileged to state the cost of such conversion to oil and electricity in the total net amount of $1,141.49 without objection, and the jury was permitted to consider this evidence under the charge of the court, to which there was only a general exception taken. Furthermore, their real estate expert, Mr. Carmalt, testified that he was not prepared to testify as to these costs.

We find no merit in their argument on this final point.

Judgment affirmed.

WATKINS, J., dissents.