J-A02004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOSHUA MOORE AND TASHA MOORE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| HAROLD D. BISHOP, REVOCABLE | : | |
| TRUST AND IRENE BISHOP | : | |
| | : | No. 575 MDA 2023 |
| Appellant | : | |

Appeal from the Judgment Entered April 14, 2023
In the Court of Common Pleas of Northumberland County Civil Division at
No(s):  CV-2018-00861

BEFORE:  NICHOLS, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.:          **FILED: SEPTEMBER 4, 2024**

Appellant Harold D. Bishop Revocable Trust[1] appeals from the judgment entered in favor of Appellees Joshua Moore and Tasha Moore.  On appeal, Appellant contends that the trial court erred when it determined that a license for land use had been established, which infringed upon Appellant's right of privacy and control of its own land.  Appellant also argues that the trial court erred when it did not award damages to Appellant.  We affirm.

_____

[1] The record reflects that Appellees Joshua and Tasha Moore filed a cause of action seeking a declaratory judgment of an easement by prescription, easement by estoppel, and quiet title.  ***See generally*** Complaint, 5/14/18. The complaint listed Harold D. Bishop, in his personal capacity, as the defendant.  ***See id.*** at ¶ 2.  During the course of the instant litigation, Mr. Bishop passed away and was substituted in the caption by the Harold D. Bishop Revocable Trust.  ***See*** Amended Substitution of Successor, 9/8/2020. Irene Bishop and Kim Bishop are both trustees of the Harold D. Bishop Revocable Trust.  ***Id.***  For ease of reference, we shall refer to the Harold D. Bishop Revocable Trust as "Appellant" and to Mr. Bishop by name.

The trial court set forth the following factual and procedural history:

[Appellees] and [Appellant] own property on North Bend Road in Muncy. The properties are adjacent to one another and share a common boundary line. [Appellees]' property consists of approximately 79.56 acres of land that they purchased June 3, 2016. [Mr. Bishop] purchased his property May 19, 1967[, which] is approximately 471 acres. A dirt road extends[2] from North Bend Road eventually entering and crossing over [Mr. Bishop's] property onto [Appellees'] property where it terminates. Sometime in 2018 [Mr.] Bishop caused a locked gate to be built which blocked [Appellees'] access from North Bend Road. [Appellees] then filed suit on May [14], 2018. [Appellees'] complaint seeks relief under theories of easement by prescription and easement by estoppel.

The [trial court] conducted a view of the subject properties and the [access] road on June 24, 2022. The [trial court] and counsel met at [North Bend] Road.[3] In travelling up the [access] road it

_____

[2] At trial, the parties stipulated that the road at issue in the instant litigation was not a public road. N.T. Trial, 8/4/22, at 15-16. For ease of reference, we shall refer to the road at issue as the "access road" or the "North Bend access road."

[3] In its opinion accompanying its October 26, 2022 order, the trial court stated that both the trial court and counsel for both parties met at the entrance to the road at issue from North Bend Road. Trial Ct. Op., 10/26/22, at 1 (unpaginated). There is no dispute between the parties that the road at issue extends from North Bend Road. *See* Appellant's Brief at 8-9; Appellees' Brief at 3, 6.

This Court entered an order on June 11, 2024, directing the trial court to file an order accurately describing the access road at issue in this litigation, including the names of the pertinent roads and the subject access road due to discrepancies in the trial court's June 26, 2023 order concerning its reference to a "Horseshoe Bend Access Road." *See* Order, 6/11/24. On June 26, 2024, the trial court complied with our directive and filed a supplemental opinion. Therein, the trial court stated that the notation to Horseshoe Bend Access Road "was a mistaken reference to a nearby road that does not have any relevance to the litigation," and that the contested road in this litigation has been identified as North Bend Access Road, across the Bishop property, or simply, the "access road." Trial Ct. Suppl. Op., 6/26/24, at 1.

was noted that the [access] road was in good condition for a mountain road. The [access] road was wide enough for a SUV to travel without problems. There were patches of grass on either side of the [access] road. Counsel for [Appellant] argued that these were recent improvements made by [Appellees] for plowing snow. [Appellees'] counsel countered that these patches were to help control rainwater runoff. After travelling the [access] road there is an open area. The [trial court] observed a mobile home on a foundation with electrical service running to the home. There was also a fairly large camper as well as some snowmobiles and a snowmobile trailer. There was a large loading area there that was used when the prior owners had a Christmas tree farm on the land.

Trial commenced [on] August 4, 2022, with [Appellees] being the first witnesses to testify. [Appellee], Joshua Moore testified that he first started going to the property in 2014. He leased the property for two years prior to his purchase. He testified that he uses the [access] road almost daily and that he stores equipment such as skid loaders, track hoes and bulldozers. Mr. Moore testified that when he bought the property there was never any problems with the use of the [access] road.

[] Kenneth [McCarty] testified that he was familiar with the access road for approximately 70 years. He testified that growing up his grandfather's house was about half a mile from the access road. Mr. [McCarty testified] that there was a family living on the now Moore property when he was around twelve. In fact, Mr. [McCarty's] father actually owned the property until he sold it to Mr. Kristoff who was [Appellees'] predecessor in title.

[Appellees] next called [] Leslie Hauck who worked for Mr. Kristoff on the property harvesting Christmas trees. Mr. Hauck actually helped with the construction of the foundation for a mobile home as well as installing a septic system. During the summer months the [access] road was used four to five times a week and during the Christmas tree season the [access] road was used two or three times a day. The [trial court found] Mr. Hauck to be a very credible witness.

Patricia Ann Kristoff was the next witness. Her father-in-law was Andrew Kristoff who owned the property prior to transferring it to his three sons. She travelled to the property very often, stating she was there every weekend. The Kristoff family always used the [access] road to access their property.

The [trial court] then heard from Suzanne Buchanan and Christine Haffling[,] the granddaughters of Andrew Kristoff. Their testimony echoed the testimony of Patricia Kristoff as to the time spent at the property and their use of the [access] road to access the property.

The [trial court] heard deposition testimony of [] Jay Raup. Mr. Raup's deposition was taken at his residence August 1, 2022. Counsel for [Appellant] objected on the basis of relevancy at the time of the deposition and to the entry of the deposition in evidence because Mr. Raup was not physically present to testify. Counsel for [Appellees] produced a letter from Mr. Raup's doctor. The objection was overruled. Mr. Raup's testimony was that his family lived at [what is now Appellees'] property from 1949 to 1951. His family used the North Bend access road on a daily basis during this time.

[Appellant] called [] Victor Marquardt as [its] first witness. Mr. Marquardt is the zoning enforcement officer in the township where the property is located. [Appellees] stipulated that he would testify that there were no zoning change permits on file, that there were no commercial permits for the property and that any septic system there is for only a cabin for pumping containers.

[Appellant] next called [] Nathaniel Gearhart. Mr. Gearhart is a licensed surveyor. He performed a survey of [Appellant's] property in 2017/2018. Mr. Gearhart testified that he searched the title to [Appellant] and [Appellees'] properties and there was no unity of title. He also testified that he was not aware of any other defined right of ways or roads giving the [Appellees'] property access to a public road.

Vincent Emery testified that his family owned the property adjoining [Appellant's] property. He was also familiar with the property from leasing hunting rights to [Appellant's] property for approximately 20 years. He was also familiar with the property owned by [Appellees] by virtue of leasing that property for hunting from the Kristoffs. Mr. Emery testified about the condition of the buildings and camper located on the Kristoff property and noted he believed them to be uninhabitable.

The next two witnesses called by [Appellant] were Michael Richmond[,] a representative of PP&L[,] who testified about the PP&L right of way running across the property and [] Vince Emery, the father of Vincent Emery[,] who corroborated his son's testimony.

> Kim Bishop[,] one of the co-trustees of the Harold Bishop Revocable Trust[,] testified that her father purchased the property in 1967. Ms. Bishop testified about another property owned by [Appellees] referred to as the Friel property. This property is adjoining the property that had been the Kristoff property. She testified that there is a separate access to the public road from the Friel property. Ms. Bishop testified as to various photographs that she took of the disputed easement showing improvements to the road such as shale being put on the [access] road.

Trial Ct. Op., 6/26/23, at 1-5 (citations omitted and formatting altered).

Following trial, on October 26, 2022, the trial court entered an order granting Appellees "all right, title and interest in and to the land of the road known as [North] Bend Access Road for ingress and regress to Tax Parcel No. 026-00-006-020, by virtue of an easement by estoppel." Trial Ct. Order, 10/26/22. The trial court further enjoined Appellant from "obstructing or preventing access by [Appellees] to their land via the [North Bend] Access Road." *Id.* Appellant filed a timely post-trial motion, which the trial court denied on March 23, 2023.

The Northumberland County Prothonotary entered judgment on April 14, 2023, and Appellant filed a timely notice of appeal.[4] Appellant subsequently filed a court-ordered Pa.R.A.P. 1925(b) statement and the trial court issued an opinion addressing Appellant's claims.

Appellant raises the following issues for our review:

---

[4] "Under our Appellate Rules, an appeal in a civil case in which post-trial motions are filed lies from the entry of judgment." ***Printed Image of York, Inc. v. Mifflin Press, Ltd.***, 133 A.3d 55, 58 n.6 (Pa. Super. 2016) (citation omitted and some formatting altered).

1. Did the trial court commit [an] abuse of discretion or error of law in finding sufficient evidence of a license for use of the woods lane having been given by Harold Bishop or any of his predecessors, as found and relied upon by the trial court, where no contact with Harold Bishop or any of his predecessors had occurred or was testified to, where the only direct or indirect contact was a recent locking of a gate by Mr. Bishop to deter trespassing and where the use of the woods lane alleged had started and ended deep within a large unenclosed and undeveloped woodland tract of [Appellant]?

2. Did the trial court commit [an] abuse of discretion or error of law in finding a specific and sufficient reliance by [Appellees] or their predecessors on a prior license, as required for any finding of "easement by estoppel?"

3. Did the trial court commit abuse of discretion or error of law in not awarding damages to [Appellant] for the observed and even admitted damage by [Appellees] to the primitive wooded character of [Appellant's] land?

Appellant's Brief at 4-5 (some formatting altered).

## License and Easement by Estoppel

We address Appellant's first two claims together. In his first issue, Appellant contends that the trial court abused its discretion when it found that there was sufficient evidence of a license for use of the access road at issue. *Id.* at 17. In support, Appellant contends that "the only direct or indirect contact" Appellees had with Appellant prior to this litigation was when Appellant locked a gate on the access road "to deter trespassers[]" and Appellees' alleged "use of the [access road] over [Appellant's] land . . . started and ended deep within a large unenclosed and undeveloped woodland tract of" Appellant's property. *Id.* Appellant argues that the trial court engaged in improper speculation by concluding that Appellant "must have known about

- 6 -

the use of the [access road] by people not already authorized as hunters, loggers, guests, or PP&L personnel[.]" *Id.* at 21 (formatting altered). Appellant further contends that the trial court's conclusion is "belied by the [] fact that soon after [Appellees] began using [the access road] with larger equipment and began altering it, [Appellant] erected a gate to stop the unauthorized use." *Id.*

In his second issue, Appellant alleges that the trial court abused its discretion and committed an error of law when it found "a specific and sufficient reliance by [Appellees] or their predecessors on a prior license, as required for [] finding [an] easement by estoppel." *Id.* at 22 (formatting altered). Specifically, Appellant argues that no one ever sought Appellant's permission to use the access road at issue and that unauthorized use of the access road continued without Appellees incurring any expense in reliance on prior permission to use the access road. *Id.* at 23.

We begin with our standard of review:

Our standard of review in a declaratory judgment action is narrow. We review the decision of the trial court as we would a decree in equity and set aside factual conclusions only where they are not supported by adequate evidence. We give plenary review, however, to the trial court's legal conclusions.

In reviewing a declaratory judgment action, we are limited to determining whether the trial court clearly abused its discretion or committed an error of law. Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

- 7 -

*Jarl Investments, L.P. v. Fleck*, 937 A.2d 1113, 1121 (Pa. Super. 2007)

(citations omitted).

> With respect to licenses and easements, this Court has explained:
>
> Licenses are often compared to easements.  In general, a license is a mere personal or revocable privilege to perform an act or series of acts on the land of another, which conveys no interest or estate.  *Baldwin v. Taylor*, 31 A. 250 (Pa. 1895).  A license is distinguishable from an easement because it is usually created orally, *id.*, is revocable at the will of the licensor, *Stein v. Bell Tel. Co.*, 151 A. 690 (Pa. 1930), and is automatically revoked by the sale of the burdened property.  *Thompson v. Commonwealth Dept. of Highways*, 257 A.2d 639, 642 (Pa. Super. 1969) (citing *Puleo v. Bearoff*, 103 A.2d 759 (Pa. 1954)).  However, a license may become irrevocable under the rules of estoppel and in those circumstances it is similar to an easement. [Jesse Dukeminier and James E. Krier, *Property*, at 800 (3d Ed. 1993)].
>
> The Pennsylvania Supreme Court adopted the equitable doctrine of irrevocable license in the mid-nineteenth century stating that "a license to do something on the licensor's land when followed by the expenditure of money on the faith of it, is irrevocable, and is to be treated as a binding contract."  *Huff v. McCauley*, 53 Pa. 206, 208 (1866); *Kovach v. General Telephone Co.*, 489 A.2d 883, 885 (Pa. Super. 1985).  The Court subsequently explained that such a license,
>
>> while not strictly an easement, is in the nature of one.  It is really a permission or license, express or implied, to use the property of another in a particular manner, or for a particular purpose.  Where this permission has led the party to whom it has been given, to treat his own property in a way in which he would not otherwise have treated it . . . it cannot be recalled to his detriment.
>
> *Harkins v. Zamichieli*, 405 A.2d 495, 498 (Pa. Super. 1979) (quoting *Pierce v. Clelland*, 19 A. 352 (Pa. 1890)).  Thus, the irrevocable license gives "absolute rights, and protects the licensee in the enjoyment of those rights."  *Cole v. Ellwood*, 65 A. 678, 680 (Pa. 1907).  Moreover, "successors-in-title take subject to an irrevocable license if they had notice of the license

before the purchase." ***Kovach***, 489 A.2d at 885 (quoting ***Harkins***, 405 A.2d at 498).

***Morning Call, Inc. v. Bell-Atlantic Pennsylvania, Inc.***, 761 A.2d 139, 144

(Pa. Super. 2000) (footnotes omitted).

This Court has also stated:

An easement is a unique form of real property. It grants not a right of possession but a right of use. Restatement (Third) of Property: Servitudes § 1.2 cmts. a, d (2000); Grant S. Nelson et al., *Contemporary Property*, [at] 688-89 (1996); ***see also Clements v. Sannuti***, 51 A.2d 697, 698-99 (Pa. 1947). It affects two parcels of land: the owner of the dominant estate enjoys the benefits of the easement while the owner of the servient estate must honor and endure the burdens. [***Morning Call***, 761 A.2d at 142]; Restatement (Third) of Property: Servitudes §§ 1.2, 1.3, 1.5. An easement is not independently alienable but is conveyed concurrently with the estate to which it is tied. ***See*** [Restatement (Third) of Property: Servitudes] §§ 5.1, 5.6.

Easements may be created by express agreement, by prescription, by implication, by estoppel, or by operation of law. ***Morning Call***, 761 A.2d at 142. "An easement by estoppel— traditionally considered an irrevocable license in Pennsylvania— will arise when a landowner permits a use of property under circumstances suggesting that the permission will not be revoked, and the user changes his or her position in reasonable reliance on that permission." ***Knapp v. Norfolk Southern Railway Co.***, 350 F.Supp.2d 597, 611-12 (M.D. Pa. 2004); Restatement (Third) of Property: Servitudes § 2.10. The permission does not need to be express, but may be inferred through the owner's acquiescence in an open and obvious use of the land. ***See Turnway v. Soffer***, 336 A.2d 871, 878 (Pa. 1975); ***see also*** Restatement (Third) of Property: Servitudes § 210 cmt. e. An owner who allows use of the land to continue "under circumstances in which it is reasonable to foresee that the user will substantially change position is estopped from denying the existence of an easement in favor of the user. ***id.*** § 2.10(1); ***accord Morning Call***, 761 A.2d at 144.

*Lehman v. Smith*, 295 MDA 2021, 2021 WL 5826723 at *3 (Pa. Super. filed Dec. 8, 2021) (unpublished mem.)[5] (some formatting altered).

At trial, Kenneth McCarty testified that he had been familiar with the access road at issue for approximately seventy years. He further testified that when he was twelve or thirteen years old, he observed a vehicle belonging to people who lived at what is now Appellees' property using the access road. N.T. Trial, 8/4/22, at 46.

The trial court also heard testimony from Patricia Kristoff, who testified that she had been going to what is now Appellees' property since 1972. *Id.* at 92. Her father-in-law operated a Christmas tree farm on the land. *Id.* at 93. Ms. Kristoff testified that up until 2012, she would frequently visit the property and use the access road to get to the property. *Id.* at 98-99. Leslie Hauck testified that he first went to the property in 1967 and that he "practically live[d] there." *Id.* at 57. Mr. Hauck worked for the Kristoffs' Christmas tree farm. *Id.* at 58. Mr. Hauck further testified that the access road was used four to five times per week during the summer months and "a couple times a day" during the harvest season. *Id.* at 60-61. Mr. Hauck stated that tractor trailers were used on the access road. *Id.* at 61-62, 76. In his experience using the access road, Mr. Hauck never encountered a natural or man-made barrier. *Id.* at 78. He stated that he considered the

---

[5] We may cite to this Court's unpublished memoranda filed after May 1, 2019 for persuasive value. *See* Pa.R.A.P. 126(b).

access road to belong to the Kristoffs. *Id.* Mr. Hauck never asked for permission to use the access road and did not know if the Kristoffs ever sought permission from anyone to use the access road. *Id.* at 79.[6]

Finally, the trial court heard testimony from Appellee Joshua Moore. Mr. Moore testified that prior to purchasing the property at 1300 North Bend Road, he leased the property for hunting rights. *Id.* at 14-16. Mr. Moore further testified that he uses the access road to access the property, which he uses for farming and to store equipment such as log skidders, track hoes, skid steers, and bulldozers. *Id.* at 16-17. Mr. Moore uses the access road to get that equipment to the property. *Id.* at 17.

Mr. Moore stated that when he purchased the property from the Kristoffs, his predecessor in interest, he discussed the use of the access road. *Id.* at 18. The Kristoffs related to Mr. Moore that they never had any issues using the access road and that there "wouldn't be a problem using it." *Id.* Mr. Moore testified that at the time he purchased the property, it was his understanding that the access road "was really the only access into the property, and nobody's had any problems using the road for all the years." *Id.* at 21. Mr. Moore "[d]idn't really think there were would be a problem at all." *Id.*

---

[6] The trial court explicitly stated that it found Mr. Hauck to be a "very credible witness." Trial Ct. Op., 6/26/23, at 3. *See Infante v. Bank of America, N.A.*, 130 A.3d 773, 776 (Pa. Super. 2015) (stating that a trial court's factual findings, absent an abuse of discretion, are binding on appeal when such findings are based upon the credibility of witnesses). In the instant case, the trial court's credibility determinations are supported by the record.

In the instant case, the trial court reached the following conclusion:

It is apparent to the [trial court] that the North Bend Access Road has been in use since at least the 1950s with the knowledge and at least tacit acquiescence of [Appellant's] predecessor in title. There was a deposition testimony of Mr. Raup that his family resided on [Appellees'] property and used the North Bend [Access] Road for ingress and egress to the property.

[Appellees'] predecessor, the Kristoff family, used the road consistently and continuously in its Christmas tree farming operation. There were several campers/mobile homes there. Members of the family used the North Bend [Access] Road practically year-round and daily during the height of the Christmas tree season. The [trial court], during its view of the property, saw [] a mobile home with electrical service and at least one camper. [Appellees] rented the property from the Kristoff family for hunting for several years prior to purchasing the property. It is impossible to believe that [Mr.] Bishop did not know of or acquiesce [to] the use of the North Bend Access Road by Kristoff. It is clear that both [the] Kristoffs and [Appellees] relied on the continued use of the road. [Appellees] have established an easement by estoppel over the North Bend Access Road. [Appellant's] argument that [Appellees'] claim is barred by the Unenclosed Woodlands Act[7] is unfounded, as the Act would not and should not be applied in the case of easement by estoppel.

Trial Ct. Op., 6/26/23, at 6-7 (formatting altered).

Following our review of the record, we discern no abuse of discretion or error of law by the trial court. *See Jarl Investments*, 937 A.2d at 1121. As noted above, the trial court heard extensive testimony regarding the use of the access road for the decades preceding the instant case. Ultimately, the trial court concluded that Appellees acted in reasonable reliance on their ability to use the access road to enter and exit their property. *See Lehman*, 2021

---

[7] 68 P.S. § 411.

WL 5826723 at *3 (citing **Morning Call**, 761 A.2d at 144; Restatement (Third) of Property: Servitudes § 2.10(1)). Accordingly, the trial court's conclusions are amply supported by the evidence presented at trial and no relief is due.

### Damages

In his remaining issue, Appellant argues that the trial court erred and abused its discretion by failing to award damages to Appellant. Appellant's Brief at 24. Appellant argues that even if the grant of an easement is affirmed, the portion of the trial court's order addressing damages should nonetheless be reversed and remanded. Specifically, Appellant argues that changes Appellees made to Appellant's wooded tract "should be compensated by payment to [Appellant], even if the easement granted is somehow affirmed by this Court." **Id.** at 26. Appellant further argues that it presented evidence of damage to its land during the trial. **Id.** at 25 (citing N.T. Trial, 8/5/22, at 32-33, 38).

Appellees respond that "no testimony or evidence of any damages or a monetary loss was presented [to the trial court] by Appellant." Appellees' Brief at 19. Therefore, Appellees conclude that the trial court properly determined that Appellant was not entitled to damages. **See id.**

The party seeking damages bears the burden of proving the damages incurred. **See Mader v. Duquesne Light Co.**, 241 A.3d 600, 617 (Pa. 2020). A trial court, when sitting as factfinder, is free to believe all, some, or none of the evidence, make all credibility determinations, and resolve any and all

conflicts in the evidence. *See Korn v. Epstein*, 727 A.2d 1130, 1135 (Pa. Super. 1999).

Here, the trial court concluded:

> [Appellant] alluded to monetary damages due to [Appellees] allegedly changing the nature and character of the road. [Appellant] failed to put forth any claim or any evidence at trial as to the nature of those damages or the cost to remedy them. From the [trial court's] perspective after the view of the site, any claims, in any event would appear to be *de minimis*[.]

Trial Ct. Op., 10/26/22, at 6 (unpaginated).

Following our review of the record, we discern no abuse of discretion or error of law by the trial court in declining to award damages to Appellant. *See Jarl Investments*, 937 A.2d at 1121. As recognized by the trial court, Appellant presented testimony at trial that shale was placed on Appellant's property that was not present before Appellees purchased their tract. *See* N.T. Trial, 8/5/22, at 32. Additionally, Appellant presented testimony that its property was altered to run off snow and water, which created mud and stagnant water. *Id.* at 33. Appellant also presented evidence of erosion on its property. *Id.* at 33-36. However, Appellant did not provide any evidence as to any loss it incurred or any cost to remedy any damage allegedly caused by Appellees. Therefore, Appellant failed to meet its burden to establish damages. *See Mader*, 241 A.3d at 617. Accordingly, Appellant is not entitled to relief. For these reasons, we affirm the trial court's judgment entered in favor of Appellees Joshua Moore and Tasha Moore.

Judgment affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 9/4/2024