## Scavo *v.* Commonwealth of Pennsylvania, Department of Highways, Appellant.

Argued January 19, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*David A. Johnston, Jr.,* Assistant Attorney General, with him *William C. Sennett,* Attorney General, for Commonwealth, appellant.

*Joseph E. Gallagher,* with him *O'Malley, Morgan, Bour & Gallagher,* for appellee.

OPINION BY MR. JUSTICE COHEN, July 2, 1970:

This is an eminent domain action in which the Commonwealth is appealing from a judgment of the Court of Common Pleas of Lackawanna County.

A 10.94 acre tract on the northern side of Moosic Street in the City of Scranton belonging to Angelo and Frank Scavo, appellees, was condemned by the Department of Highways of the Commonwealth for the purpose of constructing Interstate I-81. This occurred on October 1, 1962, and on August 27, 1964 the Board of View, for which appellees had petitioned, awarded $39,000 plus detention damages. Both sides appealed this award, and a trial before a jury was held in the Court of Common Pleas of Lackawanna County. At trial appellees and their experts testified to a value of $95,000-$97,000 (about 20 cents per square foot) while the Commonwealth's experts testified to a value of $20,000-$23,500 (about 4-5 cents per square foot). On January 11, 1968 the jury returned a verdict of $55,000 plus detention damages. Judgment was entered in favor of appellees after denial of the Commonwealth's motion for a new trial.

The two issues before us relate solely to evidence the Commonwealth contends was improperly admitted over its timely objections. The Commonwealth, apparently relying on *Community Housing Services, Inc. v. Pittsburgh Urban Redevelopment Authority,* 435 Pa. 344,

253 A. 2d 260 (1969), also attempts to relate the alleged errors with respect to the evidence to a claim of excessiveness of the verdict. Whatever may be the burden with respect to a verdict-winner, it is clear that a verdict-loser (the Commonwealth in this action) need only show reversible error with respect to the admission of/or the refusal to admit certain evidence and need not make any argument as to the size of the verdict.

The Commonwealth's first argument concerns the trial court's permitting Angelo Scavo and one of appellee's experts to testify over objection that $20,761.50 had been spent by appellees for excavating, leveling, blasting and hauling to improve the land. As to the testimony of Angelo Scavo, appellees argue that under §704 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P. L. 84, Art. VII, as amended, 26 P.S. §1-704 (Supp. 1970)[1] a condemnee may testify as to just compensation without being qualified as an expert and that he may enumerate the elements he considered in arriving at his valuation. *Hoffman v. Commonwealth*, 422 Pa. 144, 221 A. 2d 315 (1966). While that is true, the record discloses that Scavo did not testify as to the cost of improvements when listing the factors he took into consideration in making his valuation but rather prior to that and in a manner unrelated to that. When asked what elements he did consider, Scavo listed the location of the property, the many uses to which it could be put and the price paid his neighbor.

In *Pittsburgh Terminal Warehouse & Transfer Company v. Pittsburgh*, 330 Pa. 72, 198 Atl. 632 (1938),

---

[1] Even though the condemnation took place prior to the effective date of the Eminent Domain Code, §302 of the Code applies Article VII to all steps taken subsequent to the effective date in all condemnation proceedings in which the condemnation was effected prior to the effective date. See *Hoffman, supra* at 146, n. 2.

we construed the Act of April 21, 1915, P. L. 159, which provided that in eminent domain proceedings witnesses could "state in detail, and costs, all the elements of benefit or damage which they have taken into consideration in arriving at their opinion." We stated, 330 Pa. at 75: "As far as 'costs' are concerned, there is no doubt—and it always has been held—that actual outlays and estimates of necessary construction work may be given in evidence, not as independent and distinct items of damage, but as elements bearing on the difference between values before and after the exercise of the right of eminent domain." See, also, *Mott v. Commonwealth of Pennsylvania, Department of Highways,* 417 Pa. 426, 207 A. 2d 872 (1965). While the Eminent Domain Code has broadened the permissible scope of testimony of a condemnee, §705(1) nowhere purports to change the prior law so as to permit him to testify to particular costs as independent and distinct items of damage. *Thompson v. Commonwealth, Department of Highways,* 214 Pa. Superior Ct. 329, 257 A. 2d 639 (1969). The condemnee may testify as to the facts and data he considered in making his valuation, but when he testifies to the cost of improvements prior to listing these facts and data, that cost appears as an independent and distinct item of damage. In this case the fact that improvements were made is relevant in that the condition of the surface of the land bears directly on fair market value, but it was improper for Scavo to have testified as to the improvements in any way other than as an "element bearing on the difference between values before and after the exercise of the right of eminent domain."

Appellees argue that §705(2)(iv) which permits testimony as to the "value of the land together with the cost of replacing or reproducing the existing improvements thereon less depreciation or obsolescence" is au-

thority for the admissibility of Scavo's testimony. Assuming that the condemnee can testify to anything an expert witness could under §705(2), there is no merit to this argument. The inclusion of the words "less depreciation or obsolescence" indicates the legislature was referring only to those improvements which are subject to depreciation or obsolescence. As the improvements in this action involved a change in the surface of the land and as land is subject neither to depreciation nor obsolescence, this section can give them no support.

The testimony of appellees' expert (Jones) as to the improvements is as follows: "Q. What were some of the comparable sales you considered, or some of the factors you considered in reaching that determination that the fair market value was twenty cents per square foot? A. In the first place, I took into consideration what the people paid for the—the present owners paid for it—and whether any money was expended after they bought the property, and they paid $8200 for the property and spent, in land preparation, $20,000, *I started out with $28,200 these people had invested;* then I checked sales in the immediate neighborhood— . . . ." (Emphasis added). In so testifying the expert witness assumed that a dollar of investment resulted in a dollar of fair market value, and he started out with a minimum value of $28,200.[2] The lower court erred in admitting this statement because it put before the jury the $20,000 expenditure as an independent and distinct item of damage rather than as one of the facts the witness considered in arriving at his valuation.

The Commonwealth's second argument is that the court below erred in overruling its objections to testi-

---

[2] Although no specific objection was made to this statement, the Commonwealth, during the testimony of Angelo Scavo which occurred earlier, objected to any offer as to the price paid for improvements, and their objection at that time was overruled. We feel they have protected their right to raise this question now.

mony by both Angelo Scavo and Herbert Jones (one of appellees' expert witnesses) that in reaching his determination of fair market value each had considered the price paid to a Helen Kenowski. The Kenowski property was located 150-200 feet southwest of the Scavo tract and was condemned by the Commonwealth concurrently with the present condemnation. After a viewers' hearing a settlement of $8772 (approximately 76 cents per square foot) was reached, and both Scavo and Jones testified that this figure was one of the pieces of data they considered. While Jones did testify as to other sales he had considered (this was the only sale Scavo considered), the proximity in location, time and circumstances of the Kenowski condemnation to the case before it was likely of great importance to the jury.

The Eminent Domain Code, §705(1), states that "A qualified valuation expert may, on direct or cross-examination, state any or all facts and data which he considered in arriving at his opinion. . . ." This, however, must be subject to the limitation that neither an expert witness nor the condemnee (who is deemed a qualified expert, *Hoffman,* supra at 151) can testify to facts and data which are not judicially relevant and competent. Snitzer, Eminent Domain §705(1)2.1. The subject of the admissibility of testimony as to sales of comparable property to a condemnor was discussed in the Concurring Opinion of Mr. Justice POMEROY in *Community Housing Services, Inc. v. Pittsburgh Urban Redevelopment Authority,* supra at 348. We concur in the reasoning expressed there and hold that the court below erred in overruling the Commonwealth's objections to this testimony.

Finally, this evidence is not made admissible by §705(2)(i) which permits a qualified valuation expert to testify as to "The price and other terms of any sale or contract to sell the condemned property or compa-

rable property made within a reasonable time before or after the date of condemnation." While the comment to the section states that its purpose is to broaden the permissible scope of testimony, the case cited for the restrictive view, *Berkley v. Jeannette*, 373 Pa. 376, 96 A. 2d 118 (1953), did not involve a sale to a condemnor, and nowhere does the statute indicate a purpose to change the law with respect to the special situation (see Justice POMEROY's Concurring Opinion) represented by such sales. Therefore, it appears that a settlement with a condemnor is not the type of "sale or contract to sell" contemplated by the Eminent Domain Code.

The judgment is vacated, and the record is remanded for a new trial.

Mr. Justice EAGEN concurs in the result solely for the reason that the trial court erred in permitting evidence of fair market value based on the price paid by the Commonwealth for another condemned property.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The majority holds that the trial court erred when it permitted the condemnee and his expert to testify as to the cost of improving the condemned land. I cannot agree. It is quite clear that this testimony was given to indicate why the property had the value the condemnee claimed, and is therefore admissible. See Eminent Domain Code §§704, 705(1). This testimony was not given as a separate item of damages, as the majority asserts, but rather was linked—even in the trial judge's charge—with the purchase price of the land. Thus it is my view that the cost of site improvement, just as the purchase price of the property, was properly admitted to show the fair market value of the land, and how the condemnee and his expert arrived at this valuation.

Nor can I agree with the majority that it was error to admit into evidence the price paid by the Commonwealth for a nearby property. I am not persuaded that we should exclude such testimony simply because when the condemnor and condemnee agree on a price, they may be "settling a potential lawsuit." *Community Housing Services, Inc. v. Pittsburgh Urban Redevelopment Authority*, 435 Pa. 344, 350, 253 A. 2d 260, 262 (1969) (POMEROY, J., concurring). There are many "extraneous" factors which can motivate any buyer and seller when they agree upon a price, and yet these private agreements are admissible. See Eminent Domain Code §705(2)(i). I see no reason to single out the condemnation situation for special treatment, unless, of course, it is the condemnor seeking to introduce such testimony. In that case the testimony is properly excluded, "otherwise the condemning authority could then in effect use one of its own enforced low sales prices to drive down the price in all comparable condemnations." *Community Housing Services*, 435 Pa. at 352, 253 A. 2d at 263 (ROBERTS, J., dissenting).

According, I dissent and would affirm the judgment of the trial court.

Mr. Chief Justice BELL joins in this dissenting opinion.