474 Pa. 75 (1977)
376 A.2d 641
In re Taking in Eminent Domain of Certain Parcels of Real Estate located in the Central Business District Urban Renewal Project No. 2, Project Penna. R-404 in the CITY OF BETHLEHEM, NORTHAMPTON COUNTY, Pennsylvania, by the Redevelopment Authority of the City of Bethlehem, Pennsylvania.
Alice E. WEIDNER, widow, James M. Smith, a/k/a James Merritt Smith, single, Alice E. Weidner, Executrix of the Estate of Stuart S.S. Smith, and the heirs of the Estate of Stuart S.S. Smith, Frances S. Smith, widow of Stuart S.S. Smith, and Bernice F. Hammel (formerly Bernice S. Smith) and Joseph Hammel, her husband, Appellants,
v.
REDEVELOPMENT AUTHORITY OF the CITY OF BETHLEHEM.
Supreme Court of Pennsylvania.
Argued November 18, 1976.
Decided August 17, 1977.
*76 James S. Palermo, Hazleton, for appellants.
Michael E. Riskin, Bethlehem, for appellee.
Before JONES, C.J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION
PER CURIAM:
The court being equally divided, the judgment of sentence is affirmed.
JONES, former C.J., took no part in the consideration or decision of this case.
O'BRIEN, J., files an opinion in support of affirmance which EAGEN, C.J., and POMEROY, J., join.
*77 ROBERTS, J., files an opinion in support of reversal which NIX and MANDERINO, JJ., join.
MANDERINO, J., files an opinion in support of reversal which ROBERTS and NIX, JJ., join.

OPINION IN SUPPORT OF AFFIRMANCE
O'BRIEN, Justice.
Appellants, Alice E. Weidner, widow; James M. Smith, a/k/a James Merritt Smith, single; Alice E. Weidner, Executrix of the Estate of Stuart S.S. Smith; and the heirs of the Estate of Stuart S.S. Smith; Frances S. Smith, widow of Stuart S.S. Smith; and Bernice F. Hammel (formerly Bernice S. Smith) and Joseph Hammel, her husband, were former landowners of a certain parcel of real estate in Bethlehem, Pennsylvania. The parcel consisted of four storefronts with apartments, three houses and a parking lot. On April 18, 1973, appellee, Redevelopment Authority of the City of Bethlehem, filed a declaration of taking, condemning the above real estate.
Upon the failure of the parties to reach a settlement, a board of viewers was appointed. On November 27, 1973, the board of viewers awarded appellants $114,000. On December 4, 1973, appellants filed an appeal to the Court of Common Pleas of Northampton County. On May 13, 1974, a jury trial commenced, and on May 15, the jury returned a verdict in the amount of $167,500 in favor of appellants. Post-verdict motions were dismissed by the court en banc. The Redevelopment Authority then took an appeal to Commonwealth Court. On December 11, 1975, Commonwealth Court reversed the judgment of the court below and ordered a new trial. Appellants filed a petition to our court for allowance of appeal. On June 4, 1976, this court granted the petition.
Appellants argue that Commonwealth Court erred in excluding testimony concerning the price paid by the Redevelopment Authority for a parcel of real estate which adjoined that of appellants. The testimony was offered to show *78 "comparable market value."[1] Commonwealth Court held that the "sale" to the Redevelopment Authority was a sale to condemnor and, therefore, not admissible under this court's decision in Scavo v. Com. of Pa., Dept. of Hwys., 439 Pa. 233, 266 A.2d 759 (1970). We agree.
In Scavo, this court adopted the concurring opinion of Mr. Justice Pomeroy in Community H.S. v. Pgh. Urban Red. Auth., 435 Pa. 344, 253 A.2d 260 (1969). In doing so, we excluded evidence of sales to a "condemnor" as not being sales on the open market and therefore not probative in the determination of comparable market values.
In Community Services, supra, 435 Pa. at 349-50, 253 A.2d at 262, Mr. Justice Pomeroy (joined by Mr. Justice, later Chief Justice, Jones and Mr. Justice O'Brien), stated:

"Sales to a condemnor of properties which it could, and if necessary would, acquire by condemnation are not, in my judgment, sales on the open market between a willing seller and a willing buyer. They involve an ingredient of compulsion on the part of the seller that might (Emphasis in original) make the `sales price' too low; there may be an ingredient of anxiety for speedy acquisition or some other factor operating in the mind of the authority which would place the `sales price' on the high side of fair market value. The fact is that the parties are not only buying and selling real estate; they are also settling a potential lawsuit, with all the elements of time, trouble, expense, and worry that would be involved. The properties may indeed be comparable, but for one reason or *79 another the transactions may not be, and the so-called `sales price' may be higher or lower than if no condemnation were involved. To admit such testimony would be to invite side excursions into all the other related factors; such collateral matters would unduly complicate and delay the trial. For these and the other reasons contained in the opinion of the lower court, I see no reason to depart from the so-called `exclusionary rule', which has long been the law in Pennsylvania, and represents the majority view in the United States. See Nichols on Eminent Domain (3d Ed., 1967), §§ 21-33; Snitzer, Pennsylvania Eminent Domain (1965), § 705(1)-2.11." (Emphasis added.)
The facts concerning the price paid by the Redevelopment Authority for the adjoining real estate are as follows. On May 10, 1972, the Redevelopment Authority filed a Resolution of Condemnation concerning the property adjoining appellant's, which was owned by Milton Greenberg and his wife. Prior to the filing of a Declaration of Taking, the Greenbergs sold the property to the Redevelopment Authority for $190,000.
Appellants argue that because the Greenberg "sale" was completed prior to the Declaration of Taking, that fact alone is sufficient to remove the impediment of the exclusionary rule enunciated in Scavo, supra. We do not agree.
The rationale of Scavo rests on the conclusion that sales to a condemnor are neither representative of nor probative of the comparable sales between a willing and informed buyer and a willing and informed seller. We are of the opinion that once the Resolution of Condemnation was filed by the Redevelopment Authority against the Greenberg property the exclusionary rule of Scavo, supra, became operative.
After the Resolution of Taking was filed, all of the factors discussed in Scavo came into play:
1. Compulsion by the condemnor tending to suppress the price.
2. Anxiety for fast acquisition tending to artificially inflate the price.

*80 3. Settlement of lawsuit.
4. Collateral inquiry into all the above factors and on factors which would complete the trial.
In the instant case, the admitting into evidence of the price paid by the Redevelopment Authority to the Greenbergs was error. See Scavo, supra. I would affirm the order of the Commonwealth Court.
EAGEN, C.J., and POMEROY, J., join in this opinion in support of affirmance.

OPINION IN SUPPORT OF REVERSAL
ROBERTS, Justice.
I dissent for the reasons stated in my dissenting opinions in Scavo v. Commonwealth, Department of Highways, 439 Pa. 233, 240, 266 A.2d 759, 763 (1970) (Dissenting Opinion of Roberts, J., joined by Bell, C.J.), and Community Housing Services, Inc. v. Pittsburgh Urban Redevelopment Authority, 435 Pa. 344, 350, 253 A.2d 260, 262 (1969) (Opinion of Roberts, J., joined by Bell, C.J.). I adhere to the position that "[t]he reasons which disable a condemnor from putting in evidence of purchases it has made in settlement of condemnation suits have no application to a landowner who offers such evidence himself." Nash v. D.C. Redevelopment Land Agency, 129 U.S.App.D.C. 348, 395 F.2d 571, 572 n. 6 (1967) (per curiam).
Mr. Justice NIX and Mr. Justice MANDERINO join in this opinion.

OPINION IN SUPPORT OF REVERSAL
MANDERINO, Justice.
I disagree with the conclusion in the opinion in support of affirmance that the appellants were not entitled to introduce into evidence as a comparable sale, the Redevelopment Authority's purchase of the Greenberg property for $190,000. Although I have serious reservations about the correctness *81 of the decisions in Scavo v. Com. of Pa., Dept. of Hwys., 439 Pa. 233, 266 A.2d 759 (1970) and Community H.S. v. Pgh. Urban Red. Auth., 435 Pa. 344, 253 A.2d 260 (1969), those cases are distinguishable from the case before us.
In Scavo, supra, and Community Services, supra, condemnation had taken place. In this case, no declaration of taking had been filed when the condemnor purchased the alleged "comparable sale" property. Although a sales price pursuant to a jury verdict may not be a "comparable sale," the sales price negotiated between the condemnor and condemnee has to have a reasonable relationship to market value. If it did not, the condemnor is either making a gift of public monies or coercing the condemnee in some way to accept an unreasonably low settlement. Since the condemnor is bound by law not to pay in excess of market value, the condemnee in fairness should be permitted to introduce evidence of the Greenberg purchase in this case.
The evidence would not be admissible, however, if the Redevelopment Authority sought to introduce the same evidence. Although the Redevelopment Authority was bound by law not to pay the excess of market value, there is no such law that bound the Greenbergs (or any other condemnee) to accept market value. The price that the Redevelopment Authority paid to the Greenbergs is evidence of reasonable value (otherwise the condemnor is violating the law).
Accordingly, I would reverse the order of the Commonwealth Court and reinstate the order of the Court of Common Pleas of Northampton County.
ROBERTS and NIX, JJ., join in this opinion in support of reversal.
NOTES
[1] Section 705(2) of the Eminent Domain Code, 1964, Spec.Sess. June 22, P.L. 84, Art. VII, § 705, 26 P.S. § 1-705(2) permits testimony of "comparable market value," in ascertaining just compensation, § 601 of the Eminent Domain Code, measure of damages, § 602 and fair market value, § 603. Section 1-705(2) provides in pertinent part:

"A qualified valuation expert may testify on direct or cross-examination in detail as to the valuation of the property on a comparable market value, reproduction cost or capitalization basis, which testimony may include but shall not be limited to the following:
"(i) The price and other terms of any sale or contract to sell the condemned property or comparable property made within a reasonable time before or after the date of condemnation."