## LUZERNE COUNTY FLOOD PROTECTION AUTHORITY

v.

**Florence J. REILLY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 2, 2002.

Decided June 4, 2003.

Lewis W. Wetzel, Wilkes–Barre, for appellant.

John C. Aciukewicz, Wilkes–Barre, for appellee.

BEFORE: McGINLEY, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY JUDGE LEADBETTER.[1]

Appellant Florence J. Reilly appeals from an order of the Court of Common Pleas of Luzerne County which denied Reilly's motion for post trial relief. Reilly's motion sought a new trial on the basis that the trial judge erred in precluding testimony from Reilly's expert witness.

On April 30, 1999, appellee Luzerne County Flood Protection Authority (Authority) filed a Declaration of Taking under the Eminent Domain Code[2] (Code) against Reilly's property, involving 360 square feet, or .008 acres, in fee simple, and an additional 11,954 square feet, or .274 acres, as a temporary construction work area easement, commencing May 7, 1999.[3] Following a hearing before a Board of View and Decision, both parties appealed to the Trial Court.

The matter proceeded to trial by jury on February 3, 2002. Prior to jury selection, the parties agreed that the sole issue before the jury was the extent of any damages sustained to Reilly's property as a result of the temporary easement. Reilly argued that the property at issue in the easement was unusable for the period encompassed thereby. The Authority argued that because ingress and egress

were not interrupted, the impact of the temporary taking was negligible. Each party offered expert testimony in support of their respective positions, with Reilly's expert testifying that several hundred thousand dollars worth of damages were sustained, and the Authority's expert testifying that no damage was sustained.

During the proceedings before the Trial Court, Reilly's expert, Charles A. Moyer, was qualified in the field of real estate appraisals and valuation and was permitted to testify as to his opinion, and as to the facts and data supporting that opinion, of the damages incurred. However, the Trial Court sustained an objection by the Authority, and precluded Moyer from repeating the opinions that he solicited from various attorneys as to the legal marketability of Reilly's title during the three-year period encompassed by the easement. After the court repeated its ruling, Reilly did not formally note an exception.

At the close of the trial, the jury returned a verdict of zero damages. Reilly timely filed a post-verdict motion pursuant to Pa. R.C.P. No. 227.1, raising as error the preclusion of the expert's testimony on his conversations with the attorneys. Reilly's motion was denied and she now appeals to this court, asserting that common pleas erred as a matter of law in refusing the expert testimony.

As a prefatory matter, we must address the argument of the Authority that Reilly has waived the issue. The Authority argues that before the Trial Court, Reilly failed to take exception to the ruling, and then withdrew the question that preceded

1. This case was reassigned to the author on March 20, 2003.

2. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §§ 1–101—1–903.

3. Other portions of the record place the commencement of the easement at May of 1998 although the formal Declaration was filed nearly a year later. This discrepancy has no significance to the issues raised on appeal.

the expert's hearsay testimony. The following exchange occurred:

*Mr. Wetzel [Attorney for Reilly]:* Are there any other factors that you considered in determining your after value?

*Mr. Moyer:* Yes. I spoke with several attorneys regarding the property and one of the issues that I was trying to clarify was if you have a construction easement on a property, can you get clear title to transfer that property? And the overwhelming answer to that—

*Mr. Aciukewicz [Attorney for the Authority]:* Objection, Your Honor.

*The Court:* Sustained.

*Mr. Aciukewicz:* You can't—

*The Court:* You made an objection, I sustained it, I don't need a speech.

*Mr. Aciukewicz:* Ask that it be stricken, Your Honor—

*The Court:* Denied.

*Mr. Aciukewicz:*—his testimony.

*The Court:* Go ahead.

*Mr. Wetzel:* I'm going to withdraw that particular question, Your Honor.

N.T. 2/4/02 at 20–21.

■ It is unarguable that Reilly did not take exception to the Trial Court's exclusion of the testimony at issue, and after the ruling withdrew the question. However, the Authority's waiver argument fails to account for the current state of the law regarding the taking of exceptions. The Authority cites *Beal v. Atlantic States Motor Lines,* 348 Pa. 503, 35 A.2d 298 (1944) for the proposition that a party before the trial court cannot complain on appeal regarding the exclusion of evidence where no exception to the court's ruling was taken or noted.[4] *Beal,* however, is no longer controlling in light of amendments to our Rules of Civil Procedure[5] enacted well after *Beal* was decided.

Pennsylvania Rule of Civil Procedure No. 227(a) now expressly states, in relevant part:

Exceptions.

(a) It shall not be necessary on the trial of any action or proceeding to take exception to any ruling of the trial judge. An exception in favor of the party against whom the adverse ruling was made shall be deemed to have been taken with the same force and effect as if it had been requested, noted by the official stenographer and thereafter written out, signed and sealed by the trial judge.

(Comment to Rule omitted). Additionally, Pa. R.C.P. No. 227.1 states in relevant part:

Post–Trial Relief

(a) After trial and upon the written motion for Post–Trial Relief filed by any party, the court may

(1) order a new trial as to all or any of the issues; or

(2) direct the entry of judgment in favor of any party; or

(3) remove a nonsuit; or

(4) affirm, modify or change the decision or decree nisi, or

(5) enter any other appropriate order.

---

**4.** The Authority also cites to *Lubrecht v. Laurel Stripping Co.,* 387 Pa. 393, 127 A.2d 687 (1956) and *Beaumont v. ETL Services, Inc.,* 761 A.2d 166 (Pa.Super.2000). However, *Lubrecht* is distinguishable, as it predates the applicable amendments to the Pennsylvania Rules of Civil Procedure as analyzed above in relation to *Beal. Beaumont* contains no support for the Authority's proposition, and is, in fact, inapposite.

**5.** The Rules of Civil Procedure have been expressly held to be applicable to eminent domain proceedings. *Harborcreek Township v. Ring,* 131 Pa.Cmwlth. 502, 570 A.2d 1367, 1370–71 (1990).

(b) Post-trial relief may not be granted unless the grounds therefor,

(1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and

(2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds. .

(Comments to Rule omitted). Finally, the following explanatory comment follows Pa. R.C.P. No. 227.1:

[U]nder Rule 227, a party need not take "exception" to any ruling of the trial judge.

In the instant case, the grounds for Reilly's motion were raised and preserved at trial by her attempt to enter the excluded testimony, and those grounds were stated in her post verdict motion. Original Record (O.R.), Item 9; Pa. R.C.P. No. 227.1(b). Moreover, although counsel ultimately withdrew the question, he did so only after the court had sustained the objection and made clear it would hear no further argument on the matter. Accordingly, we find that the issue is properly before this court.

■■■ Turning to the merits of Reilly's argument, we first note the unique standard we apply in reviewing a trial court's decision whether or not to grant a new trial. As our Supreme Court has explained:

It is important to recognize that the trial court's decision whether to grant a new trial rests on its preliminary or predicate decision as to whether any reasons exist for granting a new trial. In other words, there are two levels to a trial court's decision whether to grant a new trial: First, the court must determine whether, colloquially speaking, a "mistake" (or mistakes) was made at trial. Second, the court decides whether the mistake (or mistakes) is sufficient basis for granting a new trial. The first decision—whether a mistake was made—may involve factual, legal, or discretionary matters. However, the second and ultimate decision—whether to grant a new trial—is always a discretionary matter because it requires consideration of the particular circumstances of the case.

An appellate court reviewing the decision to grant a new trial, therefore, essentially reviews that decision at two levels. First, it examines the trial court's underlying decision as to whether a mistake was made. . . .

. . . .

[Next,] it reviews the decision to grant a new trial by applying an abuse of discretion standard. . . . In considering whether the record supports the trial court's decision, the appellate court is to defer to the judgment of the trial court, for the trial court is uniquely qualified to determine factual matters. Further, an abuse of discretion occurs not merely when the trial court reaches a decision contrary to the decision that the appellate court would have reached. Rather, an abuse of discretion occurs "when the course pursued represents not merely an error of judgement, but where the judgement is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will."

*Morrison v. Department of Public Welfare*, 538 Pa. 122, 133–35, 646 A.2d 565, 571–72 (1994) (citations and footnotes omit-

ted). Finally, a review of a denial of a new trial requires the same analysis as a review of a grant. *Harman v. Borah*, 562 Pa. 455, 467, 756 A.2d 1116, 1122 (2000).

■ Accordingly, we first must examine whether the evidentiary ruling itself was erroneous. Reilly, of course, contends that it was, arguing that the excluded testimony is specifically permitted by Section 705 of the Eminent Domain Code. Section 705 reads, in relevant part:

Whether at the hearing before the viewers, or at the trial in court on appeal: (1) A qualified valuation expert may, on direct or cross-examination, state any or all facts and data which he considered in arriving at his opinion, whether or not he has personal knowledge thereof, and his statement of such facts and data and the sources of his information shall be subject to impeachment and rebuttal.

26 P.S. § 1–705. Reilly cites to the language in the comments of the Joint State Government Commission that follow Section 705:

The primary purpose and intent of this clause, however, is to change and broaden existing law which unduly limits the examination and cross examination of an expert witness, so as to permit the expert witness to testify on direct, as well as cross examination, to any and all matters which he considered (not necessarily "relied on") in arriving at his opinion of damages. Under [previously] existing law, as noted before, the expert is

unduly limited as to what he may testify to, and as a consequence, he cannot show his competence or what perhaps is more important, his lack of competence. . . .

26 P.S. § 1–705, Comment, Subdivision (1).

Ironically, Pennsylvania Rule of Evidence 705 [6] similarly provides that an expert "may testify in terms of opinion or inference and give reasons therefor; however, the expert must testify as to the facts or data on which the opinion or inference is based." However, in spite of this seemingly mandatory language, neither the Code nor the Rules of Evidence require admission of any and all hearsay statements which an expert may have considered in reaching his or her opinion. As this court generally observed in *Middletown Township v. Baker*, 105 Pa.Cmwlth. 1, 522 A.2d 1182 (1987):

Nor does the fact that section 705(1) of the Code, 26 P.S. § 1–705(1), allows an expert to testify as to all facts and data that he used in arriving at his opinion of fair market value relieve the trial judge of his responsibility of controlling the admissibility of valuation evidence. Thus, [as] in any other case, the trial judge passes, on a case-by-case basis, as to whether an item of evidence is probative. . . .

*Id.* at 1184 (citation omitted).[7] In addition, in *Scavo v. Department of Highways*, 439 Pa. 233, 266 A.2d 759 (1970), our Supreme

---

**6.** While Section 705 of the Code applies to both the hearing before the board of viewers and any subsequent trial before common pleas, the rules of evidence apply only in the latter proceeding. Section 701 of the Code, 26 P.S. § 1–701; Pa. R. Evid. No. 101.

**7.** While we have found no talismanic significance in counsel's withdrawing the question after the Authority's objection was sustained, we note that the failure to make a proffer (outside the hearing of the jury, of course) as

to the testimony sought to be admitted impairs both the ability of the trial court to assess the probative value of the evidence and this court's review. While it has no effect on the outcome here, a litigant who has failed to make such a proffer may find that he is unable to prevail on appeal, not because of any procedural default but because the record will not establish the relevancy of the excluded evidence.

Court noted that expert testimony admitted pursuant to Section 705(1) is "subject to the limitation that [the witness] cannot testify to facts and data which are not judicially relevant and competent." *Id.* at 239, 266 A.2d at 762.

Evidence Rule 705 is similarly limited. Rule of Evidence 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

This limitation, which addresses the competency of the testimony, was explained by our Superior Court in *Primavera v. Celotex Corp.*, 415 Pa.Super. 41, 608 A.2d 515 (1992), as follows:

> [T]he expert is assumed to have the mastery to evaluate the trustworthiness of the data upon which he or she relies, both because the expert has demonstrated his expert qualifications and because the expert regularly relies on and uses similar data in the practice of his or her profession. The kind of data contemplated by the rule is often, as it is in this case, the kind of data used daily by experts in making judgments, reaching diagnoses, and taking action.
>
> . . . .
>
> The fact that experts reasonably and regularly rely on this type of information merely to practice their profession lends strong indicia of reliability to source material, when it is presented through a qualified expert's eyes.
>
> . . . .
>
> The above analysis depends, of course, on the expert actually acting as an expert and not as a mere conduit or transmitter of the content of an extrajudicial source. An "expert" should not be permitted simply to repeat another's opinion or data without bringing to bear on it his own expertise and judgment. Obviously in such a situation, the non-testifying expert is not on the witness stand and truly is unavailable for cross-examination. The applicability of the rule permitting experts to express opinions relying on extrajudicial data depends on the circumstances of the particular case and demands the exercise, like the admission of all expert testimony, of the *sound discretion of the trial court.* Where, as here, the expert uses several sources to arrive at his or her opinion, and has noted the reasonable and ordinary reliance on similar sources by experts in the field, and has coupled this reliance with personal observation, knowledge and experience, we conclude that the expert's testimony should be permitted.

*Id.* at 519–21 (citations and footnotes omitted; emphasis supplied). More recently, that court has had occasion to reiterate that:

> The law in Pennsylvania is clear, an expert is permitted to express opinions formulated, in part, upon materials which are not in evidence, but which are customarily relied upon by experts in the particular field. The expert may incorporate a non-testifying expert's findings into his own express opinion, however, he is not permitted to merely restate another's conclusions without espousing his own expertise and judgment.

*Beaumont v. ETL Serv., Inc.*, 761 A.2d 166, 171 n. 8 (Pa.Super.2000) (citations omitted). Finally, admissibility of all evidence before common pleas is tempered by the overarching rule that:

Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Pa. R. Evid. No. 403.

Thus, while the substance of information relied upon by experts is not excludable simply because it is hearsay, determination of admissibility implicates an exercise of discretion in weighing the factors outlined above, and we must review the evidentiary ruling under the abuse of discretion standard. As common pleas noted, citing *Primavera*, Moyer was not qualified to opine on legal matters, and thus was not able to bring to bear his own expertise to evaluate the attorneys' opinions he sought to relate. Moreover, the record does not reflect that he regularly relies upon and uses this type of information in the practice of his profession, nor that others in his field do so. Further, what the record does clearly establish is that the issue of marketability of title was of tangential relevance, at best. Moyer explained his estimate of damages as follows:

Q. So what is the damages that you have assessed as a result of this?

A. Approximately 500 and some thousand dollars to the property.

Q. How did you reach that conclusion? What mental process did you go through?

A. What we looked at is where a property like this, there's a few ways to value real estate: One is, as you well may know if you've shown a house, the sales comparison approach where you simply compare your home to another home in the area and establish a value that way. In commercial real estate, commercial real estate has a unique aspect of being able to be leased out such as if you're familiar with Rob Mericle in the area has done Hanover Industrial Park, all those buildings that he has built up there he's leased out. Retail real estate is the same. When you go to a shopping center and things of this nature, those stores that are in line there, and the anchor stores, typically pay the owner of that property a rental rate of being in that store.

So what we did on this property was we looked at what the damages were to the income stream of this property by not having full utilization of the property. And we looked at comparisons to see what would be a rental rate for the property. Based on my experience of both owning this type of real estate, selling this type of real estate and appraising this type of real estate, I determined that the rental rate for this property should be approximately $3.50 a square foot. This is what's known as a net number.

Typically in this type of real estate the owner not only receives payment for the building but he's also compensated for all his costs associated with real estate; taxes, insurance, what's known as common area maintenance would be lot plowing, lot lighting, things of this nature.

Based on the size of the building, which is approximately 45,000 square feet, I assumed or estimated that the rental rate on the property would equate out to approximately $158,000 a year. Now if you simply multiply that by the 3.3 years that his property was not able to be utilized in such a fashion, you come up with approximately $500,000.

What we have not included in this is the cost of common areas. We have not included the reimbursement for taxes, and the taxes on this property are $20,000 a year, nor did we factor in the

cost of the insurance on the building. So that number is really, in essence, could be conceived as a low number that the owner would be due on the property. N.T. 2/4/02 at 15–17. Moyer reiterated his theory of damages following the disputed exchange.

Q. And what you're simply saying is that you believe that there was a potential loss of rental income for that three year three month period based on $3.50 a square foot?

A. For three years and three months this owner could not rent the property out and therefore the rental rate that he could have achieved in the market was approximately $158,000 a year. That multiplied by 3.3 years equals the $500,000 that this owner of the property was not entitled to because he could not fully utilize the property.

N.T. 2/4/02 at 32.[8] Plainly, whether or not title could have been transferred clear of the easement during its pendency had little or nothing to do with these calculations, and might well have been confusing to the jury. For these reasons, we find no abuse of discretion in the court's exclusion of the testimony.

Even if we were to find otherwise, we would find no error in the denial of a new trial. As the court noted in *Harman:*

> The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

562 Pa. at 467, 756 A.2d at 1122. As common pleas opined here,[9] Reilly was not prejudiced by the exclusion of the legal opinion concerning marketability of title because Moyer stated his opinion as to the amount of damages sustained and fully explained the assumptions, data and calculations upon which that value was based.

Accordingly, we find no abuse of discretion in common pleas' denial of a new trial and its order is affirmed.

## O R D E R

AND NOW, this 4th day of June, 2003, the order of the Court of Common Pleas of

---

**8.** Although he admitted on cross-examination that the property was not leased, and therefore provided no income stream to Reilly, either before or after the easement period, Moyer did not waiver from his damage analysis. This may well account for the jury's verdict.

**9.** We note that if the trial court has provided specific reasons for its ruling on a request for a new trial, and it is clear that the decision of the trial court is based exclusively on those reasons, applying a narrow scope of review, the appellate court may reverse the trial court's decision only if it finds no basis on the record to support any of those reasons. *Coker v. S.M. Flickinger Co., Inc.,* 533 Pa. 441, 454, 625 A.2d 1181, 1188 (1993). "As a practical matter, a trial court's reference to a finite set of reasons is generally treated as conclusive proof that it would not have ordered a new

trial on any other basis." *Id.* at 447, 625 A.2d at 1184; *see Commonwealth v. Widmer,* 560 Pa. 308, 317–18, 744 A.2d 745, 750–51 (2000). Alternatively, "where the trial court leaves open the possibility that there were reasons to grant or deny a new trial other than those it expressly offered, or the trial court justifies its decision on the 'interests of justice,' an appellate court must apply a broad scope of review and affirm if it can glean any valid reason from the record." *Harman,* 562 Pa. at 469, 756 A.2d at 1123–24. In this case, although it is not altogether clear that common pleas intended its brief statements on the matter to be all-encompassing, even under the narrow scope of review we find ample basis in the record to support the reason cited by common pleas for denying a new trial.

Luzerne County, dated May 6, 2002, at No. 2871–C of 1999, is hereby AFFIRMED.

Concurring and dissenting opinion by Senior Judge KELLEY.

### SENIOR JUDGE KELLEY, CONCURRING AND DISSENTING.

I concur in the result only, and respectfully dissent to the Majority's analysis of the narrow issue of the evidentiary ruling under Section 705 of the Eminent Domain Code [1] (Code), 26 P.S. § 1–705. The Majority's opinion is founded on precedents that neither considered nor applied the broadened evidentiary scope of the Code, it finds prejudicial value in the proposed testimony that is not founded in the record, and does not acknowledge both the probative value of the excluded testimony and the precedents of this Court finding relevance and probative value in title marketability evidence in eminent domain proceedings.

The Majority bases their reasoning for the exclusion of the testimony at issue upon the precedential foundation of *Primavera v. Celotex Corp.* [2] *Primavera,* however, was a products liability suit, and the testimony at issue in that case was not subject to the expanded evidentiary scope afforded by Section 705 of the Code. In its analysis of the excluded testimony, and in its use of *Primavera* as persuasive precedent, the Majority looks to the similarities between Section 705 of the Code and Pa. R.E. No. 705 for guidance as to the scope of admissible expert testimony. This reli-

ance ignores the expressly articulated intention of the General Assembly, in enacting Section 705 of the Code, to "change and broaden existing law which unduly limits the examination and cross examination of an expert witness" in eminent domain proceedings.[3] It is this express legislative intent to broaden the admissible scope of testimony in eminent domain proceedings that distinguishes *Primavera,* and Pa.R.E. No. 705, and dictates that only very limited persuasive value, if any, should be accorded to these principles in the instant matter. It is not the similarities between Section 705 of the Code and Pa.R.E. No. 705 that should guide an eminent domain admissibility analysis, but the differences.

It is unarguable that Pa.R.E. No. 705 limits and narrows the scope of admissible expert evidence. It is equally unarguable that Section 705 of the Code, by its very terms, was expressly intended to broaden that scope. An analysis structured primarily on Pa.R.E. No. 705, or on a precedent [4] such as *Primavera* that did not deal with proceedings under the Code, affords no deference to the General Assembly's express intent in enacting Section 705 of the Code, and renders that legislative enactment moot by ignoring its stated intent.

I am equally perplexed by the Majority's application of the "overarching" application of Pa.R.E. No. 403, which mandates a balancing of the probative value against, *inter alia,* the prejudicial danger of the offered evidence. There is no evidence of record, or even an allegation, that title marketabil-

---

**1.** Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101—1–903.

**2.** 415 Pa.Super. 41, 608 A.2d 515 (1992), *petition for allowance of appeal denied,* 533 Pa. 641, 622 A.2d 1374 (1993).

**3.** 26 P.S. § 1–705, Comment, Subdivision (1).

**4.** In addition to finding no precedential value in *Primavera* in relation to evidentiary issues in eminent domain proceedings, I disagree with the Majority's citation to *Beaumont v. ETL Services, Inc.,* 761 A.2d 166 (Pa.Super.2000), another products liability case that was not decided under the broadened evidentiary scope of the Code. I find *Beaumont* to be equally inapplicable to the facts *sub judice.*

ity evidence would have in any way been prejudicial in the proceedings below. I cannot find any substantial prejudicial value in Moyer's recounting of his application of foundational legal data, especially when viewed against the backdrop of that legal data's entry before a Judge and opposing counsel who are both learned in the law. Such an assurance of the accuracy of the legal data sought to be admitted would clearly outweigh any potential confusion that the data could engender, and subjects that data to external indicia of reliability and accuracy.

Additionally, I can conceive of little evidence of more probative value than the excluded testimony. While the Majority asserts that the record does not reflect that a real estate appraisal expert regularly relies upon title marketability information in formulating his opinion of the appraisal value of a commercial property, I find that statement contradictory to common sense, the record, and the law. By definition, there is little data more relevant to a commercial property's valuation than that property's marketability, legal or otherwise. Further, it is clear from Moyer's testimony that the subject property was under a contract for sale, which sale was alleged to have fallen through due in part to the easement in question. Reproduced Record at 13a. Additionally, and most tellingly, it is well established that expert opinion of title marketability is permissible in eminent domain proceedings. *See, e.g., Department of Transportation v. Kemp,* 100 Pa.Cmwlth. 436, 515 A.2d 68 (1986) (where an entity clothed in the power of eminent domain exercises that power with resulting injuries to a private party, a lack of marketability of the title to private property is a compensable injury); *Capece v. City of Philadelphia,* 123 Pa.Cmwlth. 86, 552 A.2d 1147 (1989) (in proceedings under the Eminent Domain Code, the decrease or lack of marketability of title to lands

affected may state a cause of action for consequential damages under the Code).

Finally, I find the Majority's logic circular in their argument that the inadmissibility of the title marketability evidence is supported by its tangential relation to the actual damages testimony that was admitted from Moyer. The absence of title marketability evidence in Moyer's admitted testimony should not be used as support for the exclusion of that very testimony.

In the absence of any substantial proffer as to the testimony sought to be admitted, as saliently noted by the Majority in footnote 7, I concur with the Majority's result, but dissent in regards to their reasoning on admissibility under the Code.