COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANS-PORTATION

v.

PEOPLES BANK OF GLEN ROCK, Robert B. Filer, Wanda D. Filer, B L & B Associates, Lawrence L. Eveler, Susan E. Eveler and Donald J. Smith

Real Places, LP, Appellant.

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 2008.

Decided Dec. 4, 2008.

Rees Griffiths, York, for appellant.

Donald J. Smith, Asst. Counsel, Harrisburg, for appellee, Department of Transportation.

BEFORE: McGINLEY, Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge McGINLEY.

Real Places, LP (Condemnee) appeals the order of the Court of Common Pleas of York County (trial court) which denied Condemnee's motion for post-trial relief whereby Condemnee sought the admission into evidence of alleged purchases of comparable properties by the Commonwealth of Pennsylvania, Department of Transportation (DOT) outside of condemnation proceedings.[1]

On August 16, 2002, DOT filed a right of way plan in the York County Recorder of Deeds office. The plan was entitled, "Commonwealth of Pennsylvania Department of Transportation Drawings Re–Establishing Limited Access Highway and Authorizing Acquisition of Right–of–Way for State Route 0083, Section 024 in York County, also State Route 0182." The purpose of this plan was for DOT to acquire land and realign Interstate 83 to alleviate a blind curve, commonly known as "Dead Man's Curve."

On or about September 26, 2002, DOT filed a declaration of taking of 1.002 acres of Condemnee's property in fee simple as a required right of way and a temporary construction easement of .069 acres. Condemnee petitioned for the appointment of a Board of Viewers (Board), and on September 15, 2003, the trial court appointed

---

1. Early on, the trial court denied Condemnee's motion in limine to submit this evidence.

a Board which convened on October 30, 2003, to view the property. Hearings were conducted on September 2, 2004, January 10, 2005, and January 11, 2005. The Board admitted testimony concerning sales to DOT in lieu of condemnation, as comparable sales, including a sale from ARCO to DOT and a sale from H. Roger Miller (Miller) to DOT. The Board, in its decision, determined that it improperly admitted this evidence and excluded the sales from consideration. The Board awarded general damages in the amount of $695,000.00 for the taking in fee simple of 1.002 acres of Condemnee's property.

Condemnee appealed. DOT presented a motion in limine to prohibit evidence or testimony regarding DOT's purchases of the ARCO and Miller properties. The trial court granted the motion.

Robert Borden (Borden), executive vice president for the Shipley Group[2] and responsible for managing the Shipley Group's real estate, testified that the value of the property before the taking was approximately $1,000,000.00. N.T. at 100. Borden explained that after the take "it simply is not enough space in the building ... to be able to offer the facilities that the motoring public wants nowadays whenever they come into a convenience store. They want to be able to get the things that you typically now see in a convenience store...." N.T. at 101–102. Borden opined that after the take, "my guess would be that it's probably worth 200, $250,000, maybe, but we haven't had any offer on it ... for ... even somebody to lease it." N.T. at 108.

Elliott Weinstein (Weinstein), a real estate appraiser and president of Weinstein Realty Advisors, testified on behalf of Condemnee. Weinstein prepared an appraisal and testified that the value of the property before the taking was $975,000, and, after the taking, was $150,000 resulting in just compensation of $825,000. N.T. at 244–245.

Jay D. Matthews (Matthews), a licensed real estate appraiser, testified on behalf of DOT, that in his opinion the value of the property before the taking was $620,000, and the value after the taking was $326,000. As a result, Matthews opined that the just compensation owed to Condemnee was $294,000. N.T. at 406, 413–414.[3]

Jason Andrew Snyder, an engineer who prepared a "highest and best use" report for the property for use by Matthews while he was employed by C.S. Davidson, testified that he prepared a summary of the possible uses of the property based on the applicable zoning ordinance, topography, and traffic.

The jury returned a verdict in the amount of $415,000.00. Condemnee moved for post-trial relief and challenged the exclusion of the ARCO and Miller purchases. The trial court denied the motion.

Condemnee contends on appeal that the trial court committed an error of law when it excluded the prices paid by DOT for comparable properties on the open market.[4]

The trial court, like the Board, relied on *Scavo v. Commonwealth*, 439 Pa. 233, 266

---

2. Borden explained that Condemnee was a "part of the Shipley Group." Notes of Testimony, December 10–13, 2007, (N.T.) at 60.

3. William Thomas Guy, vice president in the transportation division of Gannett Fleming, Incorporated, the engineering firm that performed the realignment of the road, also testified.

4. In an eminent domain proceeding where a party appeals a denial of a motion for a new trial, this Court's review is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Department of Transportation v. O'Neill Steel Co., Inc.*, 102 Pa.Cmwlth. 324, 518 A.2d 324 (1986).

A.2d 759 (1970) when it denied Condemnee's post-trial motion. In *Scavo*, Angelo and Frank Scavo (the Scavos) owned a 10.94 acre tract of land on the northern side of Moosic Street which was condemned by the Commonwealth of Pennsylvania Department of Highways (Commonwealth) for the purpose of constructing Interstate 81. The Board of View had awarded the Scavos $39,000 plus detention damages. Both parties appealed to the Court of Common Pleas of Lackawanna County. The jury returned a verdict in favor of the Scavos in the amount of $55,000 plus detention damages. The Commonwealth eventually sought review by our Pennsylvania Supreme Court. *Scavo*, 439 Pa. at 235, 266 A.2d at 760.

In *Scavo*, one of the issues the Commonwealth raised was that the Court of Common Pleas of Lackawanna County erred when it overruled its objections to the testimony of Angelo Scavo and Herbert Jones (Jones), an expert witness for the Scavos, on the basis that the two witnesses had based their opinion of the Scavos' property's fair market value in part on the price the Commonwealth paid for a property owned by Helen Kenowski (Kenowski). The Kenowski property was located 150–200 feet southwest of the Scavos'

property and was condemned by the Commonwealth at the same time as the Scavos'. After a hearing before a Board of View, Kenowski and the Commonwealth reached a settlement of $8,772. Both Angelo Scavo and Jones testified that they considered this figure as part of the determination of the market price of the Scavos property. 439 Pa. at 238–239, 266 A.2d at 762.

Our Pennsylvania Supreme Court vacated and remanded:

> The subject of the admissibility of testimony as to sales of comparable property to a condemnor was discussed in the Concurring Opinion of Mr. Justice Pomeroy in *Community Housing Services, Inc. v. Pittsburgh Urban Redevelopment Authority* ... 435 Pa. at 348, 253 A.2d 260 [5]. We concur in the reasoning expressed there and hold that the court below erred in overruling the Commonwealth's objections to this testimony.

*Scavo*, 439 Pa. at 239, 266 A.2d at 762.

■ In *In re Taking in Eminent Domain of Certain Parcels of Real Estate Located in the Central Business District*, 22 Pa.Cmwlth. 312, 348 A.2d 480 (1975), this Court addressed a similar situation. Alice E. Weidner and James M. Smith (collectively, owners) owned property in

5. Although it was a concurring opinion and not a majority opinion, the concurrence of Justice Pomeroy in *Community Housing Services, Inc. v. Pittsburgh Urban Redevelopment Authority*, 435 Pa. 344, 253 A.2d 260 (1969) served as a basis for not allowing evidence of the sale to the condemnor and is cited frequently. Justice Pomeroy stated:

> Sales to a condemnor of properties which it could, and if necessary would, acquire by condemnation are not, in my judgment, sales on the open market between a willing seller and a willing buyer. They involve an ingredient of compulsion on the part of the seller that *might* make the 'sales price' too low; there may be an ingredient of anxiety for speedy acquisition or some other factor operating in the mind of the Authority

> which would place the 'sales price' on the high side of fair market value. The fact is that the parties are not only buying and selling real estate; they are also settling a potential law suit, with all the elements of time, trouble, expense, and worry that would be involved. The properties may indeed be comparable, but for one reason or another the transactions may not be, and the so-called 'sales price' may be higher or lower than if no condemnation were involved. To admit such testimony would invite side excursions into all the other related factors; such collateral matters would unduly complicate and delay the trial. (Emphasis in original).
> *Community*, 435 Pa. at 349–350, 253 A.2d at 262.

the central business district of Bethlehem. The Redevelopment Authority of the City of Bethlehem (Authority) filed a declaration of taking. A Board of View was appointed and awarded damages in the amount of $114,000.00. The owners appealed to the Court of Common Pleas of Northampton County. A jury returned a verdict in favor of the owners in the amount of $167,500.00. The Authority moved for a new trial. One of the grounds for the motion was that the Court of Common Pleas of Northampton County admitted into evidence the sale of the adjoining property to the Authority. The Court of Common Pleas of Northampton County denied the motion. The Authority appealed to this Court. *Taking*, 348 A.2d at 480–481.

This Court reversed and remanded after it determined that *Scavo* was directly on point:

> In the case at bar, condemnees' (the owners), Mr. Fitelson, was permitted to testify, over objections, to a sale made to condemnor (Authority) of the Greenberg property adjoining condemnees' (the owners) property. Although the trial judge, in overruling the objection was commendably interested in allowing the condemnees (the owners) full and complete opportunity to prove the value of their land, such evidence was not relevant or competent.
> This case, we believe, is directly on point with Scavo....
> The condemnees (the owners) argue that the sale of the Greenberg property was a settlement prior to any declaration of taking being filed and was not within the rule in Community Housing Services, Inc.... However, the record reveals that this was a sale to condemnor of properties which 'it could, and if necessary would, acquire by condemnation

...' bringing it directly within that rule. *Taking*, 348 A.2d at 482.[6]

Condemnee argues that *Scavo* is factually distinguishable from the present matter and only applies to exclude evidence of the purchase price of condemned properties. In *Scavo*, the declaration of taking had been filed against the neighboring property owned by Kenowski. In fact, a Board of View had a hearing on the fair market value of the Kenowski property. Before the Board of View rendered its decision, the Commonwealth and Kenowski entered into a settlement. Here, in contrast, no declarations of taking were filed against ARCO or Miller. DOT purchased the property of ARCO and the property of Miller without having to resort to condemnation. This Court is asked to determine if this distinction from *Scavo* is critical.

DOT argues that the purchases of the Miller and ARCO properties were not arms length transactions because the operative event for the exclusionary rule is not whether a declaration of taking was filed, but the execution of the necessary document which authorized the condemnor to acquire property amicably if possible, or through condemnation if negotiations fail. Therefore, according to DOT, the trial court properly denied the motion in limine because of the exclusionary rule.

Here, Condemnee attempted to introduce evidence of sales of two neighboring properties to DOT, the common condemnor. Although no declaration of taking was filed with respect to the ARCO and Miller properties, it is clear that DOT could have filed declarations just as it did for the Condemnee's property. In *Taking*, no declaration had been filed, and this Court held that it was not necessary for a declaration of taking to be filed in order to

**6.** In *In re City of Bethlehem v. Redevelopment Authority of the City of Bethlehem*, 474 Pa. 75, 376 A.2d 641 (1977), a divided Supreme Court of Pennsylvania affirmed *Taking* by a 3–3 vote.

preclude evidence of a sale of a neighboring property to a condemnor. Based on this Court's decision in *Taking,* which our Pennsylvania Supreme Court affirmed, this Court determines that the trial court did not err when it granted DOT's motion in limine and denied Condemnee's post-trial motion.

Accordingly, this Court affirms.

### ORDER

AND NOW, this 4th day of December, 2008, the order of the Court of Common Pleas of York County in the above-captioned matter is affirmed.